## MORTIMER BROWN, RESPONDENT, *v.* ALLEN PENFIELD AND OTHERS, APPELLANTS.

*Negotiable paper—what enables Acceptor or Endorser to defeat action on.*

Nothing short of mala fides, or notice thereof, will enable the endorser or acceptor of negotiable paper to defeat an action brought upon it by one who is apparently a regular endorser or holder, especially where there is no defence as to the indebtedness.

*W. A. Beach* for Appellants.
*M. J. Townsend* for Respondent.

DAVIES, CH.J.—This action was brought to recover the amount of two drafts, drawn by one Miles White, and accepted by the Plaintiff for the accommodation of White, for the sum of one thousand dollars each. The referee to whom the action was referred, found as facts, that the firm of Tutor & Co., of the city of Troy, became the owners for value of the said bills of exchange, by due course of commercial dealing, before maturity ; that Tutor & Co. never sold or assigned the said bills of exchange, or parted or intended to sell or part with their interest therein, nor were the same transferred to the Plaintiff, nor did he pay value therefor, nor purchase the same, nor had he any interest therein at the commencement of this action. And as a conclusion of law the referee found that the Plaintiff is not entitled to recover.

The Supreme Court reversed the judgment of the referee, on questions of law as well as upon questions of fact, and ordered a new trial, costs to abide the event. From this order the Defendants appeal to this Court, and stipulate, if the order is affirmed, that judgment absolute shall be rendered against them.

The evidence sustains the finding of the referee, that the bills of exchange set forth in the complaint were drawn by Miles White, and accepted by the Plaintiff, as alleged therein ; and that the acceptors were accommodation acceptors of White ; that Tutor & Co., of the city of Troy, became the owners for value of

the said two bills of exchange, by due course of commercial dealing, before maturity.

Upon these facts Tutor & Co. could have recovered upon these drafts against the drawer and acceptors. The Defendants would not have had any defence to interfere. In December, 1852, the Defendants compromised two similar acceptances held by Tutor & Co., by payment of about fifty cents on the dollar of the amount thereof. The Defendants thus admitted and conceded their liability upon the acceptances. One of the Defendants testified "that he discovered that there were two acceptances which he could not find," and he details the efforts made to find the drafts in suit. It appears from the testimony of John R. Percy, that he became possessed of these drafts in December, 1852, from Tutor, and paid him five dollars therefor; that he subsequently sold them to R. W. Townsend, of New York, and received his note therefor for ten dollars, which was still unpaid; and Brown, the Plaintiff, testified that he purchased the drafts, at the suggestion of Percy, and gave his note therefor for twelve dollars, which was then unpaid. It was upon this evidence, and other of a similar character, that the referee found that Tutor & Co. never sold or assigned the said bills of exchange, or parted or intended to sell or part with their interest therein, nor were the same transferred to the Plaintiff, nor did he pay value therefor, nor purchase the same, nor had any interest therein at the commencement of this action. These findings the Supreme Court thought were against the weight of evidence. In that conclusion I entirely concur with that Court. I think the evidence incontrovertibly establishes that Tutor & Co. did sell, assign, and part with their interest in these drafts; and it was none the less a sale because they received an inadequate price—nay, a very absurd one. If there was any fraud in such transfer, it is not for these Defendants to set it up, neither can it avail them. The evidence also established a transfer by Percy to Townsend, and by Townsend to the Plaintiff. The Plaintiff had the possession of the drafts; the evidence of transfer was, primâ facie, sufficient to establish his title. Tutor & Co., the original lawful holders

of the drafts, did not claim them. Penfield & Co., the Defendants, certainly did not suppose or claim that they belonged to them. Percy does not claim to own them, and would be estopped from doing so if he did; Townsend makes no claim to these drafts, and it does not appear that any one besides this · Plaintiff does claim them, and his possession of them is primâ facie evidence of his ownership. It is undeniable that the Defendants are indebted to some one for the amount of these drafts, and are bound to pay the same. This case comes, therefore, directly within the principles and rulings declared in City Bank of New Haven *v.* Perkins (29 N. Y. 554). The head note to that case is, "Nothing short of actual mala fides, or notice thereof, will enable the endorser or acceptor of negotiable paper to defeat an action brought upon it by one who is apparently a regular endorsee or holder; especially where there is no defence as to the indebtedness. He cannot set up, as a defence to an action on bills of exchange drawn or accepted by him, that the same were the property of a bank, and were transferred or pledged to the Plaintiff, as security for a loan by the cashier, who had no authority so to transfer or pledge them. It is sufficient, if the Plaintiff's title is good as against the Defendant. If there are any others who claim a title to the bills superior to that of the Plaintiff, it can be determined whenever they come before the Court to assert it." Judge Johnson, in the opinion of the Court, says: The party who, the Defendant alleges, owns the bills, "may conclude never to contest the Plaintiffs' claim. The legal presumption is that it does not intend to do so, as the contrary is not shown. The Defendant stands here, therefore, as a mere volunteer, in behalf of others not before the Court, and who make no claim on their own account. Confessedly he owes the debt. He has no defence whatever on his own account; and should he succeed in defending, on the grounds on which the litigation · seems thus far to have proceeded, he may escape the payment of a just debt altogether. This the Court should not allow in a case like this, except upon clear and well-established grounds. It will be time enough to determine whether any other person has a better title, when such person shall come before the

Court to claim the bills in question, or their proceeds, from the Plaintiffs." The case of Gage v. Kendall (15 Wend. 640) was cited with approval. The defence in that case was that the Plaintiff did not own the note, although he appeared to be the endorser, and that the action had been commenced without his knowledge or consent, or any notice of or assent to the pretended transfer to him. But it was held that the owner had the right to fill up the blank endorsement with any name he pleased, and the person whose name was thus used would be deemed, on the record, as the legal owner, and that, whether he was so in fact or not, he could sue as trustee for the real owner, and the Defendant had no concern with the question. The Court said it was not a case of malâ fide possession, and also " why should the Defendant give himself the trouble to investigate the Plaintiff's title ? He owes the money to some one." So, in the case at bar, the Defendant owes the amount of the bills to some one, and from the evidence it is clear that Tutor & Co. could have collected the full amount thereof. If that firm chose to part with their notes to Percy for five dollars, it is not the province of the Defendants to challenge the transaction. Neither is it of any moment to them what, if any, consideration passed upon the subsequent transfer, and there is nothing to show that the Plaintiff's possession is malâ fide.

It follows, from these considerations, that the order granting a new trial should be affirmed; and in accordance with the Defendants' stipulation, judgment absolute should be given for the Plaintiff; and the Supreme Court is directed to ascertain the amount due to the Plaintiff upon the said two drafts or bills of exchange, and to render judgment therefor, with costs.

Judgment accordingly.

JOEL TIFFANY.
State Reporter.