## BIERCE v. STATE NAT. BANK OF MEMPHIS, TENN.

No. 616. Opinion Filed May 14, 1912.

Rehearing Denied November 14, 1912.

(127 Pac. 856.)

**BILLS AND NOTES**—Appeal and Error—"Payment" by Indorser—Effect—Action by Indorsee—Real Party in Interest—Pleading—Affirmance of Judgment. Where, in response to a telegram from a bank, the indorsee of his note, B. telegraphs the bank to have P., the indorser, take it up and draw on him with note attached, and where the bank pursuant thereto sent said telegram to P., who, acting thereon, sends to the bank the check of G. drawn on funds in said bank, together with a sight draft drawn on B. in favor of said bank for the amount of said note and interest, directing the maker, on demand, to pay to said bank said amount, "note and telegram March 2d attached with exchange," and where said bank accepts said check, charges it to the account of G., credits its "bills receivable" with the amount, stamps on its "discount ledger" opposite the entry of the note "March 2, 1906," as the date "when paid," charges said draft on the re-

mittance ledger to its correspondent bank and forwards same with note attached for collection, held that, by so accepting and charging said check, said note was paid by P. as indorser. **Held,** further, that on a return of the note unpaid by the maker, the bank, being the legal owner and holder thereof, was the real party in interest and could sue thereon and recover the full amount of said note from the maker. **Held,** further, that where a cause of action is tried upon a bad plea of confession and avoidance, and an immaterial issue found in favor of the plaintiff, the cause will not be reversed for a repleader, but the judgment will be affirmed where the petition states facts sufficient to constitute a cause of action.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*D. A. Richardson, Assigned Judge.*

Action by the State National Bank of Memphis, Tenn., against William W. Bierce. Judgment for plaintiff, and defendant brings error. Affirmed.

*Flynn, Ames & Chambers,* for plaintiff in error.

*Harris & Wilson,* for defendant in error.

TURNER, C. J. On April 2, 1906, the State National Bank of Memphis, Tenn., defendant in error, sued W. W. Bierce, plaintiff in error, in the district court of Oklahoma county, stating in its petition a cause of action against him on a certain promissory note for $4,333.34, dated March 2, 1901, due five years after date, payable to the order of James K. Porter, and by him indorsed to said bank. Among other things, Bierce pleaded payment by Porter as indorser, since which time, he says, the note belonged to him; that the bank was not the owner of the note and not the real party in interest. There was trial to a jury and judgment for plaintiff. Defendant brings the case here and assigns for error that the judgment is contrary to law in that the undisputed evidence proves payment. There being no dispute about the facts, the question is one of law for the court. On this point the testimony discloses that on March 2, 1906, the note sued on was due, and, being unpaid, the bank sent Bierce this telegram:

"Memphis, Tenn., March 2, '06. W. W. Bierce, Oklahoma City, Okla.—Have you remitted to us for your note fifty-four

hundred and sixteen (dollars) and sixty-eight cents indorsed by Porter, due today? State National Bank."

And received from him this answer:

"Oklahoma City, O. T., Mar. 2, '06. State National Bank, Memphis, Tenn., care Mr. Mfs.—Thought note due fifth. Have Mr. Porter take it up and draw on me with note attached. W. W. Bierce."

That pursuant thereto the bank thereupon sent said answer to Porter, who, being a director of said bank and president of the Gayoso Oil Works there in Memphis, sent back to the bank the check of said company drawn on said bank for the amount of said note and interest, in all $5,416.68, together with his draft:

"Memphis, Tenn., March 2, 1906. On demand pay to the order of State National Bank fifty-four hundred sixteen and 68-100 dollars, note and telegram March 2, attached, with exchange. Value received, and charge the same to account of J. K. Porter. To W. W. Bierce, Oklahoma City, O. T."

· That upon receipt thereof said bank accepted said check, charged it to the account of said company, credited the "bills receivable" account with a like amount, and pursuant to its deposit ticket of that day, which referred to the drafts as "checks, $5,416.86," on the next day credited said company with the amount thereof and sent said draft, with the note attached, to Oklahoma for collection, through the New England National Bank of Kansas City, to whose account it was that day charged; that, when said check and draft were received by plaintiff, said note stood charged on its discount ledger in the account "notes discounted," at which time, under the column "when paid," the bank caused to be stamped on the line containing the entry of the note "March 2, 1906," and said note taken from said account and charged as stated. When, in response to said draft, Bierce wired:

"Oklahoma City, O. T., Mar. 8, 1906. H. G. Lennow, State National Bank, Memphis, Tenn.—Draft drawn by Jas. K. Porter refused on account of his indebtedness to me. Wm. W. Bierce"

—this suit was brought.

While it is by plaintiff conceded, in effect, that the entries of charge and discharge made on its books at precisely the same time and in precisely the same manner show payment by check in precisely the same way by Porter of a certain individual note for the same amount due from him to the bank, it is insisted that the check of the oil company for the exact amount of the note sued, sent by Porter in this instance, did not pay this note, but that, when the bank received it, charged it to the account of said company, credited the "bills receivable" account with the amount, opposite the entry of said note and in the column "when paid" stamped "March 2, 1906," and, pursuant to the directions of Porter, sent the note off for collection attached to a draft on Bierce—that all of this indicated only that the note was taken out of "notes discounted" and placed in the remittance account for collection, and was not paid by Porter.   Not so.   When the bank accepted the check of the oil company and charged it to said company's account, which it did "March 2, 1906," the note sued on was paid by Porter.   This the cashier was forced, in effect, to concede when he testified:

"Q. Read to the stenographer, by agreement, the amount of each individual check of the Gayoso Oil Works which were paid by the bank on that date.   A. $302, $783.10, $200, $384, $250, $5,416.68; $5,416.68.   Q. There was two checks of the Gayoso Oil Works for $5,416.68 each, paid on March 2, 1906, were there?   A. There were.   Q. Did you know what these checks were for?   A. I do not.   Q. Referring again to your Journal VV, a portion of which has been offered in evidence, I will ask you to state if it is not probable that these two checks of $5,416.68 each correspond to the two amounts on that Journal VV, showing bills receivable, payable that day of W. W. Bierce, $5,416.68, and of James K. Porter for $5,416.68, the Bierce note being indorsed by Porter?   A. They do.   Q. So that the note sued on was paid to the bank by the check of the Gayoso Oil Works for the $5,416.68?   A. I do not know about that.   Q. Can you inform the court of any other possible asset to the bank which these two checks could have been used to take up except these two notes shown on your Journal VV, a portion of which has been offered in evidence?   A. I do not know of anything else. Q. Then, according to your best judgment, the note sued on was

paid by the Gayoso Oil Works on March 2, 1906? A. I don't know. I suppose this is the amount."

But, whether conceded or not, the legal effect of accepting the check and charging it to the account upon which it was drawn operated as payment of said note. When the bank received instructions from Bierce to "have Porter take it up and draw on me with note attached," it could have ignored the request. It did not do so, but sought therewith to comply. Pursuant thereto it sent said telegram to Porter, who, in turn, could have ignored it, but did not, and both co-operated to comply with the request. To this end, and for no purpose other than to carry it out, Porter sent to the bank the check of the oil company drawn for the precise amount of the note and interest with this draft:

"Memphis, Tenn., March 2, 1906. On demand pay to the order of State National Bank fifty-four hundred sixteen and 68-100 dollars, note and telegram March 2, attached, with exchange. Value received, and charge the same to account of J. K. Porter. To W. W. Bierce, Oklahoma City, O. T."

Nothing could be plainer than that in so doing Porter thereby impliedly requested the bank to accept the check in payment, charge the same to the account of the oil company, discharge the note from its then account, attach it and Bierce's telegram to said draft, and send the same off for collection. The books of the bank show that said check was by it accepted in that it was charged to the company's account. This was, in effect, as if Porter had presented to the bank the check in person, received the money on it, and paid it back again in liquidation of the note. Or as stated in 2 Morse on Banks & Banking, sec. 451:

"A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given."

Or as stated in 30 Cyc. 1207:

"The acceptance by the creditor of a check, without regard to whether it is the check of the debtor or of a third person, does not constitute payment unless it is agreed that it shall be

taken as an absolute payment.  *  *  *   But, where the check is ·in fact paid, the debt is· extinguished.  *  *  * ”

See, also, *Pratt v. Foote,* 9 N. Y. 463, citing *Levy v. Bank of United States,* 4 Dall (Pa.) 234, 1 L. Ed. 814; *Bolton v. Richards,* 6 T. R. 338; *Mayer et al. v. Heidelbach et al.,* 123 N. Y. 332, 25 N. E. 416, 9 L. R. A. 850; *Lionberger v. Kinealy,* 13 Mo. App. 4; *Pickle v. Muse,* 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900; *Indiana Bond Co. v. Bruce,* 13 Ind. App. 550, 41 N. E. 958; *Hooker, App., v. John Burr et al.,* 137 Cal. 663, 70 Pac. 778, 99 Am. St. Rep. 17; *Sage et al. v. Burton,* 84 Hun, 267, 32 N. Y. Supp.. 1122; *Patterson v. Wilson et al.,* 101 N. C. 584, 8 S. E. 229; *Smith Roofing, etc., Co. v. Mitchell,* 117 Ga. 772, 45 S. E. 47, 91 Am. St. Rep. 217.

*Pratt v. Foote, supra,* was an action by plaintiff, as president and sole owner of the Plattsville Bank, against the defendant, as maker of a promissory note dated. December 9, 1846, for $1,015.89 and interest.  The defense was payment.  There was judgment for plaintiff.  On. review the court of appeals declared the law to be that, where there was no conflicting evidence, as in that case, the question of payment was one of law for the court on the undisputed facts.  See, also, *Winfield Nat. Bank v. McWilliams,* 9 Okla. 493, 60 Pac. 229.  The undisputed facts were that in the fall of that year defendant borrowed $1,000 of Samuel Scudder for which he gave his note payable at said bank.  Scudder indorsed the note and discounted it to said bank.  The note matured November 20th.  Before it became due defendant, being prepared to pay it, gave Scudder the money and received from the latter his check for the amount dated November 20th; on the 15th defendant called at the bank and· proposed to exchange said check for said note, which was declined, but the cashier told him that he might indorse the check and leave it, and if, when it became due, it was made good, it would pay the note.  Said check was accordingly left; neither check nor note was protested.  On the day they became due, Scudder's account was overdrawn.  Prior to the 25th several thousand dollars were entered to his credit, but on that day the same remained overdrawn some $2,000.  On the 25th the de-

fendant's note was entered on the books of the bank as having been paid, and Scudder's check was charged to his account. All entries made upon the payment of a discounted note were made on that date. Between that date and December 9th Scudder failed. On December 9th defendant called at the bank and asked if his note and check had been paid. He was told that neither had been paid and that Scudder had not made good, but no information was given him concerning the entries in the books. He thereupon gave plaintiff the note upon which the instant suit was brought and received said original note and check. It was insisted that the charging of Scudder's check to his account " * * * did not extinguish the note, because the original agreement to receive the check in payment, made when it was deposited, was conditional, and the conditions were never fulfilled, and it does not appear that any subsequent agreement was ever made." But the court held not so, and said:

" * * * When the bank upon which a check is drawn accepts it upon its own debt, the same act of acceptance pays the check to the payee and the debt to the bank. Instead of paying the money upon the check, the bank cancels the debt; it is the same, in effect, as if the money was first paid to the payee of the check and instantly repaid to the bank. There can be no necessity, in such a case, for showing an express agreement to accept the check in payment; the transaction is *per se* a payment. So far as any agreement is necessary, it arises, by implication, from the acts done. The force of the entries in the books of the bank is in no degree impaired by what took place when the note was left by the defendant. The cashier refused then to receive the check unless the account of Scudder was made good. But this was a consideration in which the bank alone was interested; the defendant had no motive to insist upon this condition; hence the bank might waive it at will. The subsequent acceptance of the check by the bank, as shown by the entries in their books, was *ipso facto* a waiver of the conditions previously insisted upon. The bank had no authority to take the check and charge it in their account upon any other terms than as payment. They had the request of the defendant to receive the check in payment of the note, and in no other way. This request, made when the note was left, had never been withdrawn; when the bank consented to receive the check, therefore, it must be presumed to have received it upon the terms of the request.

\* \* \* What more was necessary to constitute an agreement than that the bank should waive its objection and finally accede to the request of the defendant by accepting the check? This the bank did. Here, then, was a proposition on one side and an assent upon the other, which is all that is necessary to make a valid contract. The bank could no more recede from this than from any other contract. It did not require the subsequent assent of the defendant to the application of the check to complete the agreement, because that assent preceded the act of the bank in accepting it. There was then, in this case, all the agreement which is necessary to cause the acceptance of the check to operate as a payment of the note"
—and reversed and remanded the case.

In *Mayer et al. v. Heidelbach et al., supra,* the court said: "I do not find that the doctrine of *Pratt v. Foote* has ever been questioned or overruled."

But from this it does not follow that the bank did not rightfully prevail in the trial court. This for the reason that this evidence was insufficient and did not tend to establish a defense. The payment of the note by Porter as indorser did not satisfy the debt of Bierce, the maker. He owed it as before. By that payment Porter became equitably entitled to be substituted to the rights and remedies of the bank and nothing more. The bank remained the legal holder of the note, and as such entitled to recover of Bierce the full amount thereof. In other words, the plea of payment by Porter as indorser, was bad, and proof of a bad plea constitutes no defense.

*Jones et al. v. Broadhurst,* 9 M. G. & S. 173, was one of the earliest and leading cases on this point. It was there held that satisfaction of a bill as between a drawer or indorser and an indorsee, whether before or after the bill becomes due, does not necessarily inure as a satisfaction on behalf of the acceptor or operate to discharge him from liability to the indorsee. In that case the declaration charged the defendant as the acceptor of a bill of exchange drawn by W. & C. Cook payable to their order three months thereafter and indorsed by them to plaintiffs. One of the pleas alleged that after said indorsement and before suit the drawers had delivered and plaintiffs had accepted certain personal property in full discharge of the bill and damages, since

which time the bill had been held by plaintiff and action prosecuted thereon contrary to the consent of the drawers. After plaintiffs had replied *de injuria,* there was trial of the issue joined on the plea, which resulted in a verdict for defendant. After which defendant was called on to show cause why judgment should not be entered for plaintiffs *non obstante veredicto* on account of the insufficiency of the plea. The question raised by the plea was whether satisfaction of a bill as between a drawer or indorser and an indorsee, made before or after the bill became due, inures as a satisfaction on behalf of the acceptor and operates to discharge him from liability to the indorsee. The court held that such it did not do, and was of opinion that the plea as proved and sustained by the verdict did not show sufficient matter to bar the plaintiffs, and made the rule absolute. The court said:

"The terms of the plea do not import that the satisfaction was made upon any contract or condition, either that the bill should be delivered up, or be deemed to be satisfied as between the plaintiffs and the acceptor; and, when the nature of the relation in which the respective parties stand towards each other is considered, no principle is apparent upon which, as a consequence in law, the satisfaction of a bill as between the indorsee and the drawer should operate as a satisfaction and discharge in favor of the acceptor. Supposing the effect of the plea to be that the plaintiffs are suing as trustee for the drawers, but against their consent, such matters would furnish no legal bar to the plaintiffs, as the law can take no notice of the trust, nor, consequently, whether the trustee is enforcing his legal rights against a third person with or against the consent of his *cestui que trust.* And we are of opinion that the defendant has not established any legal principle which will entitle him to judgment upon this plea."

See, also, *President, etc., v. Hazard,* 13 Johns. (N. Y.) 353; *Madison Square Bank v. Pierce,* 137 N. Y. 444, 33 N. E. 557, 20 L. R. A. 335, 33 Am. St. Rep. 751; *Linney v. Thompson et al.,* 3 Kan. App. 718, 45 Pac. 456; *Manley, Ex., v. Park,* 68 Kan. 815, 75 Pac. 1134, 66 L. R. A. 967; *Greene v. McAuley,* 70 Kan. 601, 79 Pac. 133, 68 L. R. A. 308.

In *Madison Square Bank v. Pierce, supra,* the defendant Pierce made his promissory note payable to his own order and

indorsed to the Bates Company, Limited, which indorsed it to the bank for value. Thereafter said company became insolvent, and its receiver paid the bank upon the liability of the indorser some 70 per cent. of the amount secured by the note. Later the bank sued Pierce, the maker, and recovered judgment for the full amount of the note, notwithstanding the proof showed said payment by the receiver and in spite of the claim as asserted by defendant that she should only be held liable for the balance remaining unpaid. This judgment by the general term was affirmed by the Court of Appeals on the authority of *Jones v. Broadhurst, supra,* the court holding Pierce to be the ultimate debtor and the party who ought to pay the note, both in discharge of the obligation to the holder and in exoneration of the indorser; that, when the bank sued on the note, it was the legal holder and the legal party in interest; that, upon the production of the note and the usual proof, judgment against the maker for the full amount was inevitable unless some defense was interposed; that, to the extent of the money then paid, the indorser became equitably entitled to be substituted to the rights and remedies of the holder and *pro tanto* was the beneficial owner of the debt, but that a court of law could not split the note into parts, but must act upon the legal interest and ownership—citing *Guernsey v. Burns,* 25 Wend. (N. Y.) 411, and *Callow v. Lawrence,* 3 Man. & Sel. 95. And this, too, under a statute requiring substantially as ours that the action must be prosecuted by the real party in interest. Bliss, Code 1890, sec. 449; N. Y. Code Civ. Proc. 1852, sec. 411.

Being in rightful possession and owner of the legal title to the note, the bank is the real party in interest, and the equities existing between Porter and the bank were immaterial so far as Bierce is concerned.

In *Linney v. Thompson et al., supra,* the only question involved was the right of the plaintiff to maintain an action upon a negotiable promissory note executed by defendants payable to Culp and by him indorsed to McDonald and by him indorsed to plaintiff. The defense was that plaintiff was not the owner of

the note nor the real party in interest, and the jury so found.   In reversing the cause the court said:

"Apart from the question of jurisdiction, can the plaintiff maintain this action?   We think he can.   Being a negotiable note, McDonald's indorsement vested the plaintiff with the legal title thereto.   In law, for the purpose of suing thereon, that made him owner.   If transferred after maturity, as is claimed, it would be subject, in the hands of the plaintiff, to all equities and defenses to which it was subject in the hands of McDonald. For the purpose of establishing two of the defenses set up—a failure of consideration, and a material alteration of the note—the defendants had the right to show that the plaintiff took the note under circumstances which would make such defenses available against him.   Beyond that, however, it was immaterial to inquire.   Whatever cause of action existed was, by the indorsement and transfer of the note, vested in the plaintiff.   The payee and C. W. McDonald, the plaintiff's indorser, being parties to the action, were concluded by any judgment rendered therein. It is no concern of the defendants to whom they pay the note, or with whom they adjudicate the questions arising concerning it, if such payment or adjudication relieves them from all responsibility to every other person.   It does not matter that the plaintiff may have paid nothing for the note, or that McDonald may expect eventually to receive the money collected thereon. Being legal owner of the instrument, the plaintiff is in law 'the real party in interest,' and may sue thereon in his own name. Any other rule would permit the maker of a note, as against an indorsee and holder, to introduce questions entirely foreign to the merits of the cause, and to obtrude inquiries regarding the business dealings of other persons which in no wise concern him or affect his rights in litigation.   This is especially true with reference to an action upon a negotiable note, brought by one having possession thereof under regular indorsement from the payee to him.   While some decisions apparently hold to the contrary, the great weight of authority recognizes the right of the indorsee and holder of a negotiable note to maintain an action thereon, in his own name, against the maker, without regard to the equities and relations existing between such indorsee and his indorser. *Brown v. Penfield,* 36 N. Y. 473; *Allen v. Brown,* 44 N. Y. 228; *Sheridan v. Mayor, etc.,* 68 N. Y. 30; *Elmquist v. Markoe,* 45 Minn. 305, 47 N. W. 970; *Mumford v. Weaver* (18 R. I. 801) 31 Atl. 1; *Spence v. Robinson,* 35 W. Va. 313, 13 S. E. 1004; *Tarbell v. Sturtevant,* 26 Vt. 513; *Caldwell v. Lawrence,* 84 Ill. 161; *Bassett v. Inman,* 7 Colo. 270, 3 Pac. 383; *Woodbury*

*v. Hinckley,* 3 Colo. App. 210, 32 Pac. 860; Bliss Code, Pl. sec. 51."

In *Greene v. McAuley,* 70 Kan. 602, 79 Pac. 133, 68 L. R. A. 308, Greene sued McAuley on two notes for $130 each, executed by McAuley to Stearns, and assigned in writing by him to plaintiff. Defendant admitted their execution and assignment, but alleged that they belonged to Mrs. Thomas; that plaintiff did not own them and had no right to maintain the action. Upon the issue of ownership, the cause was tried to a jury and resulted in a verdict for defendant. The question involved was whether the evidence given on behalf of defendant tended to establish a defense. The facts were that in 1895 Greene signed a bond as surety for Mrs. Thomas in a proceeding in error to reverse a money judgment rendered against her in the district court. To insure him against loss on the bond, Mrs. Thomas gave him control of a piece of land and the right to retain the rents thereof as security until released from the liability; that, pursuant to said agreement, Greene in his own name rented the land for the season of 1897 to Sterns, who sublet to McAuley, receiving from him for the year's rent the two notes sued upon. Subsequently, being released from liability on the bond, he and Mrs. Thomas had a settlement. "Assuming," said the court, "that Greene, after promising that he would get the notes from Stearns and give them to her, procured Stearns to assign them to him, and then wrongfully kept them, having obtained them from Stearns in lieu of the payment of rent which was owing for the use of land belonging to Mrs. Thomas, but which had been made payable to Greene in order to secure him against liability from which he had now been released, do these facts constitute a defense in an action brought against the maker of the notes by Greene, not only without the consent, but against the objection, of Mrs. Thomas? In jurisdictions where, as in Kansas (*Manley v. Park,* 68 Kan. 400, 75 Pac. 557 [66 L. R. A. 967, 1 Ann. Cas. 832]; *Graham v. Troth,* 69 Kan. 861, 77 Pac. 92), the holder of the naked legal title to a promissory note may sue upon it, even though he may be under obligation to account to some third

person for the entire proceeds, it is often said that in such an action the defendant cannot challenge the plaintiff's right to maintain it except by a showing of bad faith in the transaction. *Dyer v. Sebrell*, 135 Cal. 597, 67 Pac. 1036, and cases cited; *City Bank of New Haven v. Perkins*, 29 N. Y. 554, 86 Am. Dec. 332. In the decisions there is a somewhat singular lack of explanation, or illustration, as to just what might be considered bad faith in this connection. Doubtless the phrase is sometimes used with reference to a merely colorable transfer of title by the real owner to a stranger for the purpose of embarassing the maker of the note in his defense (*Marvin v. Ellis* [C. C.] 9 Fed. 367), but this example hardly meets the requirements of the situation, for it is also said that upon a showing that the plaintiff is only a nominal party, acting for the benefit of the real owner of the note sued upon, the defendant may avail himself of any defense that he could have interposed if he had been sued by the latter, and that his rights are protected, not by allowing him to question the plaintiff's capacity to sue, or by requiring the person finally interested to be made a party, but by permitting him to make his defense on the merits against the formal plaintiff. *Cottle v. Cole & Cole*, 20 Iowa, 481; *Salmon v. Independent Rural School Dist.* (C. C.) 125 Fed. 235; *Village of Kent v. Dana*, 100 Fed. 56, 40 C. C. A. 281; *Dickinson v. Bull*, 72 Ill. App. 75."

—and reversed and remanded the case, with directions to enter judgment as prayed in his petition. We are therefore of opinion that the bank, being the owner of the legal title to the note by indorsement, of right recovered, and that proof of the fact of payment by Porter, who (quoting from defendant's brief) "did not mean to cancel the obligation, but simply meant to pay as indorser, preserving the obligation as an outstanding one against Bierce," constituted no defense against a suit thereon by the bank. This was, in effect, our holding in *McNary et al., v. Farmers' National Bank, ante,* 124 Pac. 286, where we held that, where the payee of a promissory note assigns it to a third party as security for a loan and pays the loan pending the suit on collateral, the holder may nevertheless recover on collateral note from the maker, unless the latter is thereby deprived of some equity which

he may have had against the payee. This for the reason that, notwithstanding such payment, he remained the legal owner and holder of the note.

Since in this action this note is subject only to the equities existing between Porter and Bierce—that is, to any defense that the latter might make if sued thereon by the former—the correctness of our holding in *Bierce v. State. Nat. Bk., etc.,* 25 Okla. 44, 105 Pac. 195, is apparent. There it seems that while, to the amount of the debt, the damage sustained by reason of the fraud and deceit alleged to have been practiced by Porter on Bierce might have been a proper defense if pleaded as a set-off to the note, the court was clearly right when it sustained a demurrer to a cross-petition which sought, not that, but to lodge a judgment in damages for tort for $31,000 against the bank by reason of such alleged fraud and deceit, from liability from which it was charged the bank, by collusion with Porter, sought to shield him. Believing, as we do, that plaintiff was entitled to a peremptory instruction, there is no prejudicial error in the instruction given or refused.

While it is true that the parties went to trial upon the issue of payment by Porter, which was erroneously found in favor of plaintiff, the plaintiff has not changed front in this court by contending, as it did in the court below, that, notwithstanding such payment by Porter, being the legal owner and holder of the note, it of right recovered, and that the judgment should be affirmed. This for the reason that the plea of payment by Porter was a bad plea, and consequently the issue thereon an immaterial issue. Precisely what was done, then, was that, in admitting the execution of the note and pleading such payment, defendant pleaded a confession and avoidance which in law did not avoid. When this is true, and the case comes here tried upon a bad plea resulting in an immaterial issue found in favor of plaintiff, this court will render and enter judgment for plaintiff where his petition states facts sufficient to constitute a cause of action. This for the reason that the court below would not have committed error in sustaining a motion for judgment on the pleadings in favor of plaintiff. *Life Association of America v. Cook,* 20 Kan. 19, cit-

ing *Gaylord v. Stebbins,* 4 Kan. 42; *Douglas v. Rinehart,* 5 Kan. 393; *Reed v. Arnold,* 10 Kan. 103; *School Dist. v. Carter,* 11 Kan. 445.

In *Garland v. Davis,* 4 How. 131, 11 L. Ed. 907, an immaterial issue was joined on a mere matter of inducement. Unlike here, there was no confession and avoidance, and so the court reversed the cause for further proceedings in order that the parties might replead pursuant to the usual practice. Indicating the practice which should govern here, the court said:

"Thus, if a plea be bad, but still confesses the cause of action without setting out a sufficient avoidance, judgment can with propriety be rendered for the plaintiff on such confession, if the declaration be good. *Rex v. Phillips,* 1 Str. 397; *Jones v. Bodingham,* 1 Salk. 173; Gould on Pl. 509; *Simonton v. Winter et al.,* 5 Pet. 141 [8 L. Ed. 75]; *Kirtley v. Deck,* 13 Va. 388; 6 Mod. 10; Tidd. 827. So, if the plea be a mere nullity, putting nothing material in issue, judgment is at times allowed to be signed as for want of a plea, as if *nil dicit,* provided the declaration be good. 4 Taunt. 164; 2 Maule & Selw. 606. So, if the plea be evidently a sham plea, or fictitious, a like course is warranted. 10 East. 237; Tidd. 831. Or if the plea, though neither of these, still be defective, but sets out such facts as demonstrate that the party has no merits, and that no amendment could be made which would avail him anything, or, in other words, nothing is left in the case that can be amended. Gould on Pl. 514, sec. 39; Tidd. 831; *Henderson v. Foote,* 7 Va. 248."

Since there is nothing in these pleadings "that can be amended," there being no error in the record, the judgment of the trial court is affirmed.

All the Justices concur.