## SHAWNEE LIFE INS. CO. v. TAYLOR *et al.*

No. 5898. Opinion Filed July 25, 1916.

(160 Pac. 622.)

1. **LIMITATION OF ACTIONS—Pleading—Demurrer.** Where a petition upon its face does not show that the cause of action is barred by the statute of limitations, a demurrer thereto, urged especially upon that ground, should be overruled.

2. **PLEADING—Motions—Making More Definite and Certain.** Where a motion to make more definite and certain a paragraph of the petition seeks to raise a question presentable only by demurrer, the same should be overruled.

3. **APPEAL AND ERROR—Review—Harmless Error—Pleading.** Petition examined, and **held,** that it was harmless error, if any, to overrule a motion to strike as surplusage certain allegations complained of in the petition.

4. **CANCELLATION OF INSTRUMENTS—Conditions Precedent—Restoration of Consideration.** Where, in a suit to rescind a contract for the sale of stock and to cancel certain deeds purporting to convey certain lands executed in payment therefor and cer-

tain mortgages and a deed subsequently executed by the grantee in the first deeds, it appeared that the sale was fraudulent and the stock of no value and that plaintiffs had parted with their title and possession thereto and they could not restore, Rev. Laws 1910, sec. 986, construed, and **held,** that, as it is "everything of value" only that need be restored, the court did not err in decreeing a rescission and cancellation of the deeds and mortgage complained of.

(Syllabus by the Court.)

*Error from District Court, Alfalfa County; James W. Steen, Judge.*

Action by Peter Taylor and wife against the Shawnee Life Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Lydick & Eggerman* and *Titus & Talbot,* for plaintiff in error.

*A. C. Beeman,* for defendant in error.

TURNER, J. On January 7, 1913, Peter Taylor and Nancy Taylor, his wife, defendants in error, in the district court of Alfalfa county, sued J. C. Parker, the Shawnee Life Insurance Company, plaintiff in error, and A. M. Dicks for rescission, on the ground of fraud, of a sale to them of certain stock by the life insurance company, and for the cancellation of certain deeds, made, executed, and delivered by them, purporting to convey certain lots, the property of plaintiffs, in payment therefor; also, to cancel certain mortgages on the property subsequently executed by Parker to the company and a deed from him to Dick. After a demurrer to the petition was overruled, the company answered, in effect, a general denial, and further, a specific denial of the sale of the stock to plaintiffs. There was trial to a jury upon the issues joined and judgment for plaintiffs, whereupon the Shawnee Life Insurance Company brings the case here, making Parker and Dicks, who

do not complain of the judgment, parties defendant in error.

It is assigned that the court erred in overruling the demurrer. The petition substantially states that, prior to the transaction sought to be set aside, plaintiffs were the owners of certain lots in the town of Cherokee; that in November, 1910, defendant Parker and another, Stewart, agents of the defendant company, opened negotiations with plaintiffs, the object of which was to sell them stock in the company, which they did by means of false and fraudulent statements, in effect, that the stock was worth at least $20 a share, had a regular market value of that price, was selling readily and rapidly advancing, was limited in quantity, so that only a small portion remained unsold; and that in a few days the stock would be worth at least $30 a share. It is further alleged that the agents "guaranteed" to plaintiffs that if they would buy the stock defendant would repurchase the same from them at any time for at least that much a share; and that one of the agents stated he would be willing at any time to repurchase the stock for that much a share, stating that the same would soon be worth $100. The petition further states that said agents "guaranteed" that said company would, at the end of the first year, pay a cash dividend of not less than 10 per cent. or more; that the company was on a sound financial basis and its officers were men of high financial and moral standing; that the investment proposed would be of the best; that plaintiffs could not possibly lose in making it, but, on the contrary, would receive large and prompt dividends upon the stock. It was further alleged that plaintiffs relied upon said false and fraudulent representations; that the stock was worthless and was being sold at much less than $20 a share; that the company was not on a sound financial basis, but, on the contrary, was organized for the purpose

of obtaining money by false and fraudulent pretenses from the unsuspecting; that, by reason of said false and fraudulent representations, plaintiffs were, on November 12, 1910, induced to subscribe for 325 shares of the stock of the defendant company at $20 a share, which was issued to them. and payment to execute the deeds sought to be set aside. It is further alleged that in May or June, 1912, plaintiffs were approached by the president of the company and another, representing the Amalgamated Insurance Corporations of Indianapolis, and were told by them that the defendant company and said Amalgamated Corporations had merged into a stronger and better company; that the stock of the latter company was more valuable than the stock of the former, and, by reason thereof, induced plaintiffs to exchange their stock in the former for stock in the latter company, which they brought into court and tendered to the defendant company. They further alleged they were deceived by the false and fraudulent representations of the company, through its agents, Parker and Stewart, and would not have executed and delivered to the company their deeds, aforesaid, had they believed the certificates of stock for the 325 shares in defendant company to have been worth less than $7,500 cash and would pay dividends of at least 10 per cent. as represented by the agents who procured the deeds. The petition further states that the land given in exchange for the stock was conveyed to defendant's agent, Parker, and by him mortgaged to the defendant company, and thereafter by him sold and by warranty deed conveyed to the defendant Dicks, and prays for a rescission of the contract of sale and a cancellation of said deeds.

Assuming for the sake of the demurrer that the allegations are sufficient to impeach the transaction for fraud in the sale of the stock and the procurement of the deeds, as that transaction took place on November 12, 1910, and,

this suit was not filed until January, 1913, it is urged that the demurrer should have been sustained for the reason the petition discloses the action is barred by the statute (Rev. Laws 1910, sec. 4657), which reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * * Third. Within two years: * * * An action for relief on the ground of .fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

And we might so hold did not the petition further disclose that in May or June thereafter plaintiffs were informed by the president of the defendant company and another, who was agent for the Amalgamated Insurance Corporation of Indianapolis, that the two companies had merged into a stronger company, and that the stock of the latter company was more valuable than the stock of the former, and thereby induced plaintiffs to exchange their stock for stock in the latter company, equally as worthless. Construing the allegations of the petition together, with a view to substantial justice, it may fairly be inferred that this exchange of stock was a part of the original scheme to defraud, and was intended to complicate the transaction and render recovery more difficult, which it did, as we shall see. We are, therefore, of opinion that the court did right when he, in effect, held that the statute began to run against the action, not from November 12, 1910, the date when the 325 shares of stock in the defendant company were sold and the deeds executed conveying the land in exchange therefor, but from the date when that stock was exchanged for stock in the Amalgamated Corporations, and hence the court did not err in overruling the demurrer to the petition. For we said in *Tucker v. Hudson*, 38 Okla. 790, 134 Pac. 21:

"Where a petition upon its face does not show that the cause of action is barred by the statute of limitations, a demurrer thereto, urged specially upon that ground, should be overruled."

Since the object of the suit was obviously as stated, there is no merit in the assignment that the court erred in overruling defendant's motion to make certain parts of the petition more definite and certain so as to show whether or not the suit was one upon any of the guaranties therein set forth, or was one for rescission and cancellation, and, if not upon the former, to strike the allegations concerning the same as misleading. Neither is there merit in the assignment that the court erred in refusing to strike from said petition paragraph No. 14, "for the reason that said paragraph contains no allegation of fact entitling plaintiffs or either of them to recover of defendants," and for the further reason "that the same is surplusage." In support of that part of the motion first quoted, it is urged, in effect, that the paragraph at which it is leveled contains nothing but alleged statements of prophecy and opinion made by defendant's agent to plaintiffs to induce them to buy the stock, and hence were not "actionable fraudulent representations," as such, it is contended, "must relate to existing facts or facts claimed to exist and not to future possibilities or probabilities, opinions, guaranties, warranties or promises." Just so; but, as this question, which is, in effect, whether the pleading states facts sufficient to constitute a cause of action, should have been raised by demurrer, but was not, the same cannot be done by motion to strike. And if any part of the paragraph is surplusage, the error, if any, in overruling the motion to strike, was harmless.

On a trial of the cause to the court three witnesses testified; that is, plaintiff, who was 83 years old, and his wife,

and one Stewart, who, together with one Parker, was acting as agent for the defendant company in making the sale of the stock. The evidence discloses that on November 12, 1910, Stewart and Parker, acting as agents aforesaid and under immediate instructions from the president of the company, went to plaintiffs' home for the purpose of selling them stock in the company; that the company at no time ever had issued to it a certificate granting to it a right to do business in the state; that upon the strength of the false and fraudulent representations set forth in the petition they sold to plaintiffs at $20 per share, in all $7,500, 325 shares of its stock, and on the same day, in payment therefor, they, for the reason that defendant company was a corporation and forbidden by law to take title to real estate, made, executed, and delivered to said Parker a warranty deed to lots 7, 9, and 10 in block 31, also a warranty deed to lots 1, 2, and 3 in block 55, also a warranty deed to lot 9 in block 2, all in the town of Cherokee; after which Parker and his wife executed two mortgages, covering the entire property, to the defendant company for $3,750 each, thereby securing to it its share in the profits of the deal, and later conveyed the land to the defendant Dicks. The evidence further discloses that Stewart, the agent of defendant company, but acting for himself only, at the time plaintiffs bought the stock, took back from them $1,000 worth of it in exchange for $1,000 worth of stock in the Northwestern Land & Iron Company, belonging to him, which he afterwards turned in to the defendant company in exchange for stock in the Amalgamated Insurance Corporations. And in May or June following, plaintiffs were induced by the president of defendant company and another to exchange the remainder of their 325 shares of stock for stock in the same company, which nobody claims to be of any value whatever.

Upon this evidence it is urged that the court erred in decreeing a rescission of the sale and a cancellation of the deeds, which he did, because, they say, while plaintiffs properly pleaded a tender of the stock received in exchange, which was ordered turned over to defendant company, yet, as the evidence discloses that they had parted with the title and possession of all the 325 shares sold them by the defendant company and could not restore it and thus put the defendant company *in statu quo,* the court had no right to decree as he did. In support of this contention they quote 9 Cyc. 437, which reads:

"The contract can only be rescinded where it is possible to put the parties back in their original position and with their original rights. 'A contract voidable for fraud cannot be avoided when the other party cannot be restored to his *status quo,* for a contract cannot be rescinded in part and stand good for the residue. If it cannot be rescinded *in toto,* it cannot be rescinded at all; but the party complaining of the performance, or the fraud, must resort to an action for damages.' "

And they rely upon Rev. Laws 1910, sec. 986, which reads:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind. And, second, he must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

And so we might hold, were it not for the fact that the stock of the defendant company which cannot be re-

stored, we repeat, was of no value. As it is only every-thing of value that plaintiffs were bound to restore, the court did not err in decreeing a rescission of the contract of sale and a cancellation of the deeds and mortgages com-plained of and, in effect, clearing the title of plaintiffs to the property, especially as the court at the same time ordered turned over to the defendant company the stock of the Amalgamated Company taken in exchange for their stock. It will not do to say that the court, in his findings of fact, failed to find fraud in the sale. This for the reason that his findings of fact were not requested by either party. When such is the state of the record, the judgment being a general finding in favor of plaintiffs, it amounts to a find-ing of every fact in their favor necessary to support the judgment.

Finding no error in the remaining assignments, the judgment of the trial court is affirmed.

All the Justices concur.