## LIBERTY NAT. BANK OF WEATHERFORD v. BROMMER.

No. 23713. May 14, 1935.

A. J. Welch and Meacham, Meacham & Meacham, for plaintiff in error.

W. S. Mills and Thos. Hudgens, for defendant in error.

PER CURIAM. This action was begun in the district court of Custer county, Okla., on November 26, 1929, by the defendant in error, hereinafter styled plaintiff, against the plaintiff in error, hereinafter styled the defendant. The sole issue is the liability of the defendant bank to reimburse plaintiff a sum of money claimed to have been deposited in said bank during the year 1920. The pleadings define the issue by the assertion of the following facts:

In June, 1920, Brommer sold his Custer county farm to Adam Sauer for $8,000, which sum was deposited in said bank under an agreement with its then president, C. A. Galloway, that the bank would pay plaintiff interest at the rate of 4 per cent. per annum; that the interest might be drawn each month by plaintiff if required for his living expenses. Thereafter plaintiff withdrew $1,300 of the principal; on August 10, 1922, $376 of the principal, and on said date plaintiff and Galloway settled the account, which showed a balance due plaintiff of $6,460. Thereafter for a time plaintiff withdrew no interest, and in December, 1925, added $126 accrued interest, and on August 1, 1927, added $200 accrued interest. In the spring of 1925 he had deposited $714 of other cash. All of said sums were added to the aforesaid balance of $6,460. That each time plaintiff made a deposit of money the president, Galloway, delivered a slip of paper, which plaintiff retained. In 1927, at the suggestion of Galloway, plaintiff left all of his said papers in the bank for safekeeping. Said papers never were returned to him, although he has called for them at various times, and therefore, he is unable now to produce them. At the time of making his first request for the return of said papers he was given a statement by the bank showing an open checking account in his name. That plaintiff has never opened or maintained such an account. The checks shown on the statement given to him were those drawn by him on the interest accruing to his time deposit. Plaintiff is an untutored man

without knowledge of banking methods; whenever he had business to transact with the defendant bank, he transacted it through its president, C. A. Galloway.

In March, 1925, when plaintiff deposited the sum of $714, he was informed by Galloway that his balance was $7,174; to this balance interest thereafter accrued to August 4, 1927, which brought the balance on that date to $7,500. Since March, 1925, plaintiff admits the withdrawal of $664 interest, and the sums added to principal aforesaid. On November 15, 1928, plaintiff made oral request, and has repeated said request at various times, for an accounting on his said time deposit, but each time he was informed by J. O. Dickey, then president of the bank, that he had no time deposit therein.

The prayer of the amended petition of March 4, 1930, is for the sum of $7,656.85, with interest at 6 per cent. per annum from November 15, 1928, until paid.

The defendant bank demurred to the amended petition, asserting that no cause of action was set up. The court overruled the demurrer, and defendant excepted. An answer was filed in the form of a general denial; no specific ground of defense was pleaded. The trial was before a jury.

On direct examination the plaintiff testified supporting his principal allegations and introduced an account book kept by himself; he made each entry on the date it occurred, and pronounced each entry correct. The book corroborated his testimony, for the period covered by it, concerning his deposits and withdrawals from March 4, 1925, until June 15, 1928. At the suggestion of C. A. Galloway, president of the bank, he delivered all his papers to him for safekeeping, had been unable to obtain their return and could not produce them. He stated positively that he placed his money in the bank, and had nothing to do with, and was not interested in, its use or disposition thereafter by the bank. Plaintiff is a German-American 87 years old, and always has farmed. Regarding his money he said: "I just left it in the bank to get the 4 per cent. to live on. * * * I never had any dispute with Galloway. We was always good friends for 45 years."

Adam Sauer, a witness for plaintiff, testified, in substance, that in June, 1920, he purchased plaintiff's Custer county farm for $8,000; he paid Brommer $3,000 in cash, and in August of the same year handed him checks for $5,000 in the Liberty National Bank; that he saw plaintiff indorse and deposit his checks, and heard C. A. Galloway, president of the bank, tell Brommer he would "give him 4 per cent. on each time deposit."

Two other witnesses testified on behalf of plaintiff, explanatory and corroborative in effect.

J. O. Dickey, a witness for the bank, its present president, stated that he and Dr. McBurney, of Clinton, Okla., had purchased a controlling interest in the bank in July, 1928, and that he succeeded Galloway as president. That he had investigated the records of the bank; that plaintiff had no account other than an open checking account at that time; that he had no money to his credit in any other account. Canceled certificates of deposit were exhibited by him as a part of the records of the bank; one for $1,700, dated May 19, 1921, showing "Paid 12-31-21." Another for $4,095, dated August 8, 1921, showing "Paid 12-31-21." And another for $1,000, dated May 8, 1921, showing "Paid 12-15-21." The first certificate was due "three, six, nine or twelve months after date, on the return of this certificate properly indorsed," and the others due twelve months after date, under like conditions. The records further show that the amount of each certificate at the date of its cancellation was carried to the checking account of plaintiff, and checked out in due course. That December 31, 1921, the date the two certificates were canceled, a check for $5,052.61 was issued against plaintiff's balance. Witness does not know who wrote or signed the check, but the cash book for December 31, 1921, shows a check for $5,052.61 by E. U. Brommer, which was charged against plaintiff's balance. The certificates of deposit were not indorsed by Brommer. He further testified that one Casey, on the same date, took up his note with the bank for an identical amount.

E. J. Becker, a national bank examiner, testified concerning the making of bank deposits generally, and stated that certificates of deposit were sometimes canceled without indorsement by the payee if the bank records clearly disclosed what had become of the proceeds. That he checked the records of this bank in 1928, including the account of Brommer, and on the face of the records found no irregularity; that there could have been an irregularity not reflected on the face of the records.

L. A. White, called on rebuttal for plaintiff, was assistant cashier of the bank from 1920 to 1927; traced the record of the $5,-052.61 check, and found that it went to pay the Casey note.

Plaintiff, recalled on rebuttal, denied signing or authorizing anyone to sign for him any check for $5,052.61; denied that he loaned Casey any money, or authorized it, and does not know Casey. He denied cashing or authorizing anyone to cash for him any of his certificates of deposit.

This outline of the evidence brings out the high spots. All of it went to the jury, which returned a verdict against the defendant bank for $7,656.85, with interest at 6 per cent. from November 13, 1931, until paid.

Defendant assigns a list of 13 grounds of error. They will be considered in the order in which they are assigned in the brief of defendant, a follows:

(1) The trial court committed error in overruling the demurrer to the amended petition, in overruling objection to plaintiff's evidence, in overruling the demurrer to plaintiff's evidence, and in overruling defendant's motion for a directed verdict.

(2) The trial court erred in admitting incompetent evidence offered by the plaintiff, and in excluding competent evidence offered by defendant.

(3) The trial court erred in giving to the jury instructions Nos. 2, 3, 4, and 5, and in refusing to give defendant's special instruction No. 1, and the trial court committed fundamental error in failing to instruct the jury, on its own motion, on the theories of the defense disclosed by the evidence, and relied upon by the defendant.

(4) The verdict and judgment are not supported by sufficient legal evidence, and are contrary to the evidence and the law.

(5) The trial court committed prejudicial error in his remarks before the jury, in his manner and remarks in ruling upon various objections in the presence of the jury, in permitting plaintiff's counsel to make improper argument to the jury, and the verdict of the jury was the result of passion and prejudice.

It is well settled in Oklahoma that a statute of limitation, as a defense, must be specifically pleaded, unless the limitation clearly appears on the face of the pleadings. This action is brought for an accounting and the recovery of money. From the evidence, as well as the pleadings, a live account on the records of the bank as a continuation of its business relations with plaintiff existed at the time this suit was filed. As defendant filed its answer in the form of a general denial, the statute was not pleaded, and it does not appear on the face of the amended petition that any statute of limitation has run against the bringing of an action of this character.

In the case of Tucker v. Hudson et al., 38 Okla. 790, 134 P. 21, this court held:

"It is also urged that the petition does not state facts sufficient to constitute a cause of action, because the action is barred by the statute of limitations; but the petition does not disclose upon its face that the action is barred by the statute of limitation, and it is only when such facts appear upon the face of the petition that this defense may be presented by urging same in a demurrer upon that ground. Betz v. Wilson, 17 Okla. 383, 87 P. 844."

To like effect are: Shawnee Life Ins. Co. v. Taylor, 58 Okla. 313, 160 P. 622; Wray v. Howard, 79 Okla. 223, 192 P. 584; also many others.

The question was raised in this case by demurrer, which was followed by other motions, but the trial court having disposed of the point in the first instance, it follows that his action on the other motions should be in harmony therewith, and it was, and no error is found therein.

It was possible for the jury to have reached its verdict by a number of methods. The court treated the action, as it was brought, one for accounting on a continuous account of long standing between the parties. A number of items enter into the issue of whether defendant is indebted to plaintiff in the sum of $7,500, or any sum, or is not indebted. The $5,052.61 cash item which went into the Casey note is only one of those claimed and complained of by plaintiff. Accrued interest unpaid, and any sum or sums shown to have been added to the principal and unaccounted for to plaintiff by the bank, as shown by the evidence, were for the consideration of the jury. It chose to rely on plaintiff's calculations, as it had a right to do.

The verdict of the jury on questions of fact will not be disturbed on appeal where there is evidence reasonably tending to support it. The list of the cases in which such a rule has been laid down by this court is much too long to review and cite here, but one of its leading decisions, the case of Wichita Falls & N. W. Ry. Co. v. Stacey, 46 Okla. 8, 147 P. 1194, held:

"Where there is competent evidence rea-

sonably tending to support the verdict, and the court in its instructions fairly states the law arising upon the issues joined, the judgment appealed from will be affirmed."

This rule has been adhered to consistently and is applicable to this case on the action of the court under defendant's first proposition of error.

In the trial of most cases the rules of evidence technically applied, in disregard of reason, would upset many wise and equitable decisions. However, reason requires that evidence admitted be harmful to the objector, or, if refused admission, that it be requisite to a just or lawful outcome of his issues, to constitute error. It does not appear here that evidence either was refused or admitted to the prejudice of the defendant bank's rights.

The pleadings merely indicate that defendant denies any liability claimed by plaintiff. This is the sole theory of defense defined thereby. No sufficient or satisfactory evidence was adduced by defendant in support of any other theory. It produced its records, and the officers of the bank, who said they knew nothing not reflected by the records. Galloway was not produced, Casey was not produced, and no attempt was made to explain the Casey transaction, except by the record, which it was admitted might not show everything. No proof was offered that plaintiff signed the check, plaintiff's papers in its possession were not accounted for, and the transfer of the money in the plaintiff's account to the payment of the Casey note, held by the bank, is not proved to have been done with plaintiff's knowledge or consent, or on his authority. Except that the checking account existed, nothing was shown as to how it came about. There was nothing to prove that plaintiff loaned his money to Casey, or had authorized a loan of $5,052.61 to him; and there was no attempt to show that Galloway, in acting for the plaintiff, was not acting as president of the bank, or that he was acting as the private agent of the plaintiff.

In Menten v. Richards et al., 54 Okla. 418, 153 P. 1177, and in other cases both before and since, this court held that each party is entitled to have his theory of the case presented to the jury by proper instructions, provided the same has been properly pleaded, and he has introduced evidence tending to support such theory.

The testimony relied on by defendant to establish a theory of defense—that Galloway acted as the private agent of the plaintiff in handling his money—when read in connection with the transactions about which witnesses testified, cannot reasonably be construed to indicate agency. The certificates of deposit were issued by the bank. Plaintiff claims that $7,500 of his money was converted from his account by the bank for the payment of the Casey note, in which he was not interested, and that it owes him the amount converted, together with other sums to make up the amount claimed. Mere vague inferences and strained constructions placed on excerpts from the testimony are insufficient to formulate or define theories of defense and need not be covered by a special instruction to the jury. Theories relied upon by a party as defense matter must take definite form and clearly appear from the pleadings, or from the reasonable purport of the evidence.

The instructions given by the court, although brief, were fair, and sufficiently state the applicable law.

The evidence produced by the plaintiff is amply sufficient to justify the court in submitting the case to the jury. It reasonably tends to support the verdict.

Nothing in the conduct of the court in the presence of the jury, as disclosed by the record, constitutes prejudicial error. Argument of counsel, complained of in defendant's brief, does not appear in the record.

It appearing that supersedeas bond has been given, filed, and approved, and copy thereof set out in the case-made, and that plaintiff has moved for judgment thereon; and no reason appearing why it should be denied, judgment hereby is rendered against the sureties on the bond, Liberty National Bank, J. O. Dickey, and C. H. McBurney, for the amount of the judgment of the court, to wit, the sum of $7,656.85, with 6 per cent. interest thereon from November 13, 1931. It is further ordered that execution issue out of the trial court.

Finding no reversible error, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Charles A. Moon, O. H. Graves, and C. P. Gotwals in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Graves, the cause was assigned to a Justice of this court for examination and

248

report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.