F. F. GREENE v. A. T. McAULEY.

No. 13,876.  (79 Pac. 133.)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Real Party in Interest.*  Where a promissory note is sued upon by the holder, to whom it has been unconditionally assigned by the payee, a complete defense on the sole ground that the plaintiff is not the real party in interest can only be established by proof of facts showing that a payment to him would not be a protection to the defendant against further liability on the note.

2. ———— *Holder Held to Have the Right to Sue.*  T., being the owner of a tract of land, permitted G. to control it and rent it in his own name to secure him against loss through having signed a bond as surety for T.  G. accordingly leased the land to S., who agreed to pay him rent.  After the release of G. from liability on the bond he agreed with T. to procure from S., in satisfaction of the rent due, two notes then owned by S., and to turn them over to T.  G. obtained the notes from S. in satisfaction of the claim for rent, taking an assignment to himself, and without the consent and against the objection of T. brought action upon them against their maker, M.  *Held,* That M.

would have been protected by a payment to G., and cannot defeat a recovery on the ground that the plaintiff is not the real party in interest.

3. ——— *Agreement of Payor and Payee Immaterial.* Under the circumstances stated in the preceding paragraph the conclusion announced would not be affected by the further assumption that T. had agreed with M., without any consideration sufficient to support a contract, to accept a less sum than their face in full satisfaction of the notes.

Error from Johnson district court; WINFIELD H. SHELDON, judge. Opinion filed January 7, 1905. Reversed.

*J. P. Hindman,* for plaintiff in error.

*Chancy B. Little,* and *C. W. Gorsuch,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: F. F. Greene sued A. T. McAuley on two notes for $130 each, executed by McAuley to H. E. Stearns, and assigned in writing by Stearns to the plaintiff. Defendant admitted the execution and assignment of the notes, but in his answer alleged that they belonged to Mrs. Laura Sims Thomas; that plaintiff did not own them, and had no right to maintain an action upon them. The case was submitted to a jury upon the issue of the ownership of the notes and a verdict was given for the defendant. A judgment followed from which the plaintiff prosecutes error. The principal, and indeed the only substantial, question involved is whether the evidence given in behalf of the defendant had any tendency to establish a defense.

The plaintiff, while denying that any person except himself had any interest whatever in the notes, contends that the case is controlled by the principle that

Greene v. McAuley.

an action upon a note may be maintained by one who
holds the legal title, although without beneficial in-
terest, and that, as he had possession of the notes and
they were assigned to him by the payee, he was enti-
tled to enforce their payment, whatever claim any
third person might have had against him with refer-
ence to them. The defendant claims that the princi-
ple invoked does not apply to the facts of the case.
The circumstances out of which the litigation grows
are peculiar and an understanding of the precise ques-
tion of law presented requires that they be stated in
some detail.

In 1895 Greene signed a bond as surety for Mrs.
Thomas in a proceeding in error in the court of ap-
peals brought to reverse a money judgment rendered
against her in the district court. To indemnify him
against any loss by reason of his having signed such
bond Mrs. Thomas authorized him to control a quar-
ter-section of land owned by her, and to retain the
rents for his security until he should be released from
liability. Soon afterward she made a further agree-
ment with him, in consideration of his advancing her
money for the payment of taxes, that if she should
"win" her case in the appellate court she would deed
to him an eighth interest in this quarter-section. In
pursuance of the arrangement described Greene, in
his own name, rented the land for the season of 1897
to Stearns. Stearns sublet it to McAuley and re-
ceived from him for the year's rent the two notes in
issue. In October, 1898, a decision was rendered by
the court of appeals modifying the judgment against
Mrs. Thomas by reducing the amount, but not sus-
taining all her contentions. Greene was relieved from
further liability upon the bond, and in the following
January he and Mrs. Thomas had a settlement, it

being found that she was indebted to him in the sum of $125, for which she gave him a demand note, which was paid January 31. So far there is a substantial agreement as to facts; but there is a radical conflict as to another branch of the settlement referred to. Greene testified that it included an agrement that, in lieu of the one-eighth interest in the land which was to have been deeded to him in the event of Mrs. Thomas's winning her case in the court of appeals, he was to have the rent of the place for 1897, and that, as his tenant, Stearns, had sublet to McAuley and taken his notes, Greene should get these notes from Stearns in satisfaction of the debt owed by Stearns for the year's rent, and should retain them as his own. Mrs. Thomas testified as a witness for defendant that the note for $125 given by her to Greene was in full settlement of all demands whatsoever; that at the time of its execution he agreed that as soon as this note should be paid he would get the notes from Stearns and give them to her; and that therefore she was the real owner of the notes, and that Greene wrongfully detained them from her. On May 2, 1899, Stearns assigned the notes to Greene in discharge of his liability under his contract to pay rent.

There was evidence that Mrs. Thomas had agreed with McAuley to accept $130 in full satisfaction of both notes. It is not claimed that there was such a valid consideration for this agreement as to make it enforceable against the owner of the notes. Apparently the evidence was offered not for the purpose of reducing the amount of any judgment that might be rendered in favor of the plaintiff in this action, but to show wherein the defendant would suffer by being required to make payment to Greene rather than to Mrs. Thomas, and thereby to give him standing to question

Greene's right of recovery.   The jury accepted the testimony of Mrs. Thomas and rejected that of Greene, as is shown by their general verdict and by a number of special findings.   The question presented therefore is this : Assuming that Mrs. Thomas's statements are true, and that Greene, after promising that he would get the notes from Stearns and give them to her, procured Stearns to assign them to him, and then wrongfully kept them, having obtained them from Stearns in lieu of the payment of rent which was owing for the use of land belonging to Mrs. Thomas, but which had been made payable to Greene in order to secure him against a liability from which he had now been released, do these facts constitute a defense in an action brought against the maker of the notes by Greene not only without the consent, but against the objection, of Mrs. Thomas?

In jurisdictions where, as in Kansas (*Manley v. Park*, 68 Kan. 400, 75 Pac. 557 ; *Graham v. Troth*, 69 id. 861, 77 Pac. 92), the holder of the naked legal title to a promissory note may sue upon it, even though he may be under obligation to account to some third person for the entire proceeds, it is often said that in such an action the defendant cannot challenge the plaintiff's right to maintain it, except by a showing of bad faith in the transaction.   (*Dyer v. Sebrell*, 135 Cal. 597, 67 Pac. 1036, and cases cited ; *City Bank of New Haven v. Perkins*, 29 N. Y. 554, 86 Am. Dec. 332.)   In the decisions there is a somewhat singular lack of explanation, or illustration, as to just what might be considered bad faith in this connection.   Doubtless the phrase is sometimes used with reference to a merely colorable transfer of title by the real owner to a stranger for the purpose of embarrassing the maker of the note in his defense (*Marvin v. Ellis*, 9 Fed. [C. C.] 367) ; but this ex-

ample hardly meets the requirements of the situation, for it is also said that upon a showing that the plaintiff is only a nominal party, acting for the benefit of the real owner of the note sued upon, the defendant may avail himself of any defense that he could have interposed if he had been sued by the latter; and that his rights are protected, not by allowing him to question the plaintiff's capacity to sue, or by requiring the person finally interested to be made a party, but by permitting him to make his defense on the merits against the formal plaintiff. (*Cottle v. Cole & Cole*, 20 Iowa, 481; *Salmon v. Independent Rural School Dist.*, 125 Fed. [C. C.] 235; *Village of Kent v. Dana*, 100 Fed. 56, 40 C. C. A. 281; *Dickinson v. Bull*, 72 Ill. App. 75.)

One instance of a transfer in bad faith is presented in *Sheldon v. Pruessner*, 52 Kan. 579, 35 Pac. 201, 22 L. R. A. 709, where its purpose was to defeat the taxation of the note involved. Another is suggested in *Sheridan v. Mayor*, 68 N. Y. 30, where it was said: "It is not a case of *mala fide* possession which the defendant can avail itself of, as if a thief should bring an action upon a promissory note which he had stolen." In Daniel on Negotiable Instruments (vol. 2, 5th ed., § 1191) it is said:

"If it were shown that the plaintiff, upon suing upon a note payable to bearer or indorsed in blank, has no interest in it, and in addition that he is suing against the will of the party beneficially interested, he could not recover, as his conduct would be in bad faith."

In support of this statement the author cites *Towne v. Wason*, 128 Mass. 517, the syllabus to which reads:

"It is a good defense to a promissory note that the plaintiff, although in possession of the note, has no interest in it, and is prosecuting the action, not for

the benefit of the person beneficially interested, but against his objection.''

In that case the defense made was that the plaintiff had wrongfully and without the consent of the owner obtained possession of the note sued on, which was indorsed in blank, that he had no title to it and never had had any, and that he was not authorized to sue in behalf of the owner—in effect that he had stolen the note ; and the ground of the decision was that under the facts stated the plaintiff had no authority to receive payment for the note, and a payment to him would not have released the maker. , This suggests what we conceive to be the true rule, of general, if not of universal, application, that so far as affects the question of the right of the plaintiff to maintain the action the only inquiry open to the defendant is whether the plaintiff has such title to the note that a payment made to him would be a complete protection to defendant from any further liability.  (*Sturgis v. Baker*, 43 Ore. 236, 72 Pac. 744; *Brown v. Powers*, 53 Hun, App. Div. 251, 65 N. Y. Supp. 733; *Hays v. Hathorn et al.*, 74 N. Y. 486.)   Any investigation which goes further than this merely involves questions between the plaintiff and other claimants of the note or its proceeds, and with these the defendant has no concern.   It was said in *City Bank of New Haven v. Perkins*, 29 N. Y. 554, 566, 86 Am. Dec. 332:

''The defendant claims no title to the paper, and does not pretend to have any interest in it, except as a promisor, liable to pay to any proper holder.   There is no party before the court who has any legitimate interest in questioning the plaintiff's title, or who has, as it seems to me, under the circumstances of this case, any right to be heard on that question.  .  .  .   The defendant stands here, therefore, as a mere volunteer, in behalf of others not before the court, and who make

no claim on their own account. . . . It will be time enough to determine whether any other person has a better title, when such person shall come before the court to claim the bills in question, or their proceeds, from the plaintiffs.''

Applying the test suggested to the present case, the question is, Would McAuley have been completely protected in making payment of the notes to Greene? True, according to the contentions of defendant, when Greene settled with Mrs. Thomas he agreed to procure the notes from Stearns and turn them over to her; and nothing was said as to his taking an assignment to himself rather than to Mrs. Thomas. Yet the case is not the same, for instance, as if an agent commissioned to buy negotiable paper for his principal had wrongfully taken title in his own name; for here it required no authority from Mrs. Thomas, to be given at the time of the settlement, for Greene to collect the rent from Stearns, or for Stearns to pay Greene. Stearns having originally contracted to pay Greene and not having contracted to pay any one else, he might have paid him in cash or by any other method satisfactory to Greene. In fact, he settled his debt by assigning the McAuley notes to Greene, the person to whom, so far as he knew or had occasion to inquire, he was indebted.

The fact that the notes here sued upon were given by McAuley to Stearns for the rent of Mrs. Thomas's land is merely incidental, and has no bearing upon the decision of the controversy. They might be regarded as having been given for any other consideration without affecting the rights of the parties. Greene obtained them in exchange for, or in satisfaction of, a claim of which Mrs. Thomas was the beneficial owner, having been enabled to do so by her voluntarily al-

lowing such claim to be made payable to him.   She
never acquired possession of, or legal title to, these
notes.   The effect of the transaction, from her stand-
point, was merely to charge Greene as trustee for her
benefit with respect to them.   The situation presented
is closely analogous to that which would have arisen
if Mrs. Thomas had assigned and delivered notes
originally payable to herself to Greene as collateral
security and he had retained them after the full satis-
faction of the principal obligation to secure which
they had been transferred to him.

It is said by Mr. Randolph in his work on Commer-
cial Paper (vol. 3, 2d ed., § 1465), and also in his
article on that title in the Cyclopedia of Law and Pro-
cedure (vol. 7, pp. 1033, 1034), that as a general rule the
maker of a note should pay to one holding it in pledge
only the amount of the holder's debt, and should pay
the balance to the owner.   Two cases only are cited
in support of the text, *Mower v. Stickney*, 5 Minn. 397,
(Gil. 321), and *Wofford et al. v. Ashcraft et al.*, 47
Miss. 641.   In the former it was held that the maker
of a note who with knowledge of all the facts paid it
in full to one to whom it had been pledged, but who
had suffered it to be taken in execution by a sheriff
upon a writ running against the pledgor, was not
protected beyond the amount of the pledgee's claim.
In the latter both the pledgor and the pledgee of an
obligation were parties to an action for its enforce-
ment, and it was held that payment should have been
directed to be made to the pledgee only to the extent
of his interest, the remainder to go to the pledgor.   In
neither case was there a denial that under ordinary
circumstances the maker of a note may pay it in full
to a holder to whom it had been assigned as security
for a debt of a less amount.   On the other hand, it is

held that one to whom negotiable paper has been assigned as collateral security may as against the maker maintain action upon it even after the full discharge of the debt secured, subject to any defense that might be made against the equitable owner. (*Logan v. Cassell*, 88 Pa. St. 288, 32 Am. Rep. 453; 2 Dan. Neg. Inst., 5th ed., § 1192; 3 Rand. Com. Pap., 2d ed., § 1465.)

The peculiar feature of the present case is that the equitable owner of the notes objects to the holder's exercising further control over them, and his possession, as to her, is wrongful. Of course, the holder of a note unlawfully acquired has no authority to receive payment, or to sue upon it, though it bear a genuine indorsement to himself. This might happen, for example, if one holding a note made payable to himself were to sell and deliver it without further assignment, and were then to regain possession of it by theft. In such a case he would have neither legal ownership nor rightful possession. A payment made to him would afford no protection, and a showing of the facts would constitute a good defense to an action brought by him; but where one has rightfully obtained possession of a note and the legal title is actually vested in him, though he may be under an obligation to transfer it to another, so long as these conditions exist and no effective measures are taken by the equitable owner to enforce his rights, the payee is justified in dealing with the holder, and a payment made to him is a bar to any further demand. This would apply where the pledgee of paper deposited with him as collateral security retains it after the satisfaction of the debt secured, and it applies here. McAuley would have been completely protected by a payment to Greene, who therefore had capacity to maintain the action.

Greene v. McAuley.

Just how in such cases the interests of other claim-
ants than the holder of the paper involved may be
safeguarded is not a matter for present determination.
It has been held that where an action is brought by
the holder of the legal title to a note any one bene-
ficially interested in the proceeds may intervene for
his own protection (*Gradwohl v. Harris,* 29 Cal. 150;
*Illinois Conference v. Plagge,* 177 Ill. 431, 53 N. E. 76,
69 Am. St. Rep. 252) ; but we are not required to de-
cide whether Mrs. Thomas might have intervened in
the present case.   There was no necessity for settling
in this proceeding any dispute between her and the
plaintiff, for their rights with respect to each other
remain unaffected by its result.   Such intervention
was not necessary for the determination of whatever
controversy there may have been between Mrs. Thomas
and the defendant, because any such controversy could
have been effectually litigated without her being a
party.   Having herself clothed Greene with authority
to enforce in his own name the payment of a debt
owing to her and to give full quittance to the debtor,
she is concluded by any judgment rendered in a suit
brought by him for its collection.   (*Wetmore v. San
Francisco,* 44 Cal. 294.)   Any inconvenience that may
result to her from an application of this principle is
a risk she assumed in placing him in such a situation
that he could maintain the action.

The agreement of Mrs. Thomas to accept a part
payment for the whole does not affect the matter.   It
was supported by no good consideration and was open
to repudiation at any time.   It was incapable of en-
forcement and could not be made the foundation of
any legal right.   The plaintiff was equally entitled
to recover the full amount due upon the notes whether
he owned them absolutely, or was required to account

for their proceeds as a trustee. Nor was it material that Mrs. Thomas did not countenance the bringing of the action. It may seem something of a hardship that the defendant is not allowed to take advantage of leniency that the beneficial owner of the notes is willing to extend to him by forgiving a part of the debt or by forbearing to sue upon it; but to cut him off from this privilege is not to deny him any right that the law can recognize. He stands unconditionally charged with the immediate payment of the full amount, and the requirement that he respond to this obligation does him no legal wrong.

As the important facts of the case are embodied in the special findings a new trial is unnecessary. The judgment is reversed, and the cause remanded with directions to enter judgment for the plaintiff as prayed for in his petition.

All the Justices concurring.