[APRIL TERM, 1924]

## HAY vs. HUDSON, ET AL., HUDSON ET AL., vs. HAY

(Nos. 1199, 1206, April 8th, 1924; 224 Pac. 840.)

BILLS AND NOTES—NEGOTIABLE INSTRUMENTS LAW—HOLDER OF NOTE
ENDORSED IN BLANK BY PAYEE MAY SUE THEREON—PUBLICATION OF
NOTICE—CHATTEL MORTGAGE FORECLOSURE.

1.  Under Negotiable Instruments Law, § 9 (Comp. St. 1920, § 3942), a note indorsed in blank by payee is payable to bearer.

2.  Under Negotiable Instruments Law, § 30 (Comp. St. 1920, § 3963), a note payable to bearer, as is one indorsed in blank by the payee, is negotiable by delivery.

3.  At common law, as including the law merchant, possessor of a note indorsed in blank by payee could enforce payment by action in his own name, and his title could not be questioned therein in 'any manner short of impeaching its good faith.

4.  Notwithstanding Comp. St. 1920, § 5580, requiring actions to be prosecuted in the name of the real party in interest, under Negotiable Instruments Law, § 51 (Comp. St. 1920, § 3984), the holder, which term under section 191 (section 4124) includes the bearer, and so the possessor of a note indorsed in blank by the payee, may sue in his own name, though he has no interest in the proceeds.

5.  Plaintiff proved that he was the holder by producing the notes sued on, payable to bearer, and in his possession, prima facie establishing his right to prosecute the action, and sufficient unless overcome by showing of bad faith; defendant being protected if the real owner consents to maintenance of the action by the holder.

6.  Want of consent on the part of the owner to maintenance of action on a note payable to bearer by the holder is matter of defense, and plaintiff need not prove consent.

7.  Evidence in payee's action on note, indorsed in blank by payee, *held* insufficient to sustain a finding either that plaintiff was not in possession of the note or was suing without the owner's consent, and so not entitled to maintain the action.

8.  Under Comp. St. 1920, § 4701, requiring publication once a week "for three successive weeks" of notice of foreclosure of chattel mortgage by sale, and section 5703, providing that any notice required to be published for a

specified number of weeks shall be sufficient if published once each week for the number of issues corresponding to the number of weeks required, provided th'at not more than 15 days shall intervene between the date of last publication and the time set for sale, the phrase "for three successive weeks" does not prescribe the duration of the notice, but only the number of publications; so sale may be made on the day following the last publication, 15 days after the first publication.

ERROR to District Court, Fremont County; ROBERT R. ROSE, Judge.

Action by John W. Hay against Frank L. Hudson and others. Judgment for defendants on plaintiff's cause of action, and for plaintiff on the counterclaim of Frank L. Hudson, and plaintiff and defendant Hudson bring error.

*W. E. Mullen* and *W. E. Hardin* for Hay.

The court erred in overruling plaintiff's motion for judgment notwithstanding the verdict; the verdict returned was not sustained by the pleadings or the evidence, 5893 C. S., Mitter v. Coal Co., 28 Wyo. 439; 23 Cyc. 820; the judgment being outside the issues was void, Hart v. Metcalf, 3 Wyo. 513; Newcastle v. Smith, 28 Wyo. 371; St. Louis v. Williams, (Okla.) 155 Pac. 249; it should be reversed with directions, Lumber Co. v. Davis, 14 Wyo. 455; there were neither pleadings, evidence nor findings to sustain it, 28 Cyc. 778, the execution of the notes was admitted; no matters in avoidance were pleaded in defense; this justified a judgment notwithstanding the verdict, Jones v. R. R. Co., 23 Wyo. 162, 5895 C. S., an affirmative defense of an admitted obligation is not proveable under a general denial, Pom. C. R. Secs. 535, 536, 576; McKyring v. Bull, 16 N. Y. 297; a defense that plaintiff is not the real party in interest must be raised by demurrer or answer, 15 Ency. P. & P. 713; Spooner v. Co., 115 N. Y. 22; Pom. C. R. Sec. 69; it must be pleaded as a special defense, Esch v. White, 82 Minn. 462.; Berry v. Barton (Okla.) 71 Pac. 1074, 66 L. R. A. 513; Pom. C. R. 587; Lesh v. Meyer, 63 Kans. 524, 66 Pac. 245; Wakemand v. Norton, 24 Colo. 192, 49 Pac. 283; the causes of

action upon mortgages were equitable and triable to the court, 5724 Comp. Stats., a verdict in an equity case is merely advisory, Morgan v. Spangler, 20 O. S. 38; Lellman v. Mills, 15 Wyo. 177; motions under 6895 C. S. are decided upon the pleadings, Challen v. Cinti., 40 O. S. 113; Kime v. Jesse, 52 Neb. 606; B. & O. Ry. Co. v. Mobile, 85 O. S. 175; instruction numbered four was erroneous as the holder of a negotiable instrument may sue thereon in his own name, 3984 Comp. Stats, one in possession of a note indorsed in blank by payee, is a holder in due course, and may sue in his own name, 3984 Comp. Stats., defense that plaintiff is not real party in interest, is not available unless offsets or counterclaims are cut off, Sturgis v. Baker, (Ore.) 72 Pac. 746; Lodge v. Lewis, 1009; McPherson v. Weston, 64 Cal. 275, 30 Pac. 842; unless a plea of *mala fides* be made against plaintiff's possession, McCallum v. Driggs, 35 Fla. 277, 17 So. 407; Caldwell v. Lawrence, 84 Ill. 161, this applies even if the plaintiff is not the real owner, Brown v. Chenoworth, 51 Tex. 470; it is no defense that suit is brought by owners in a fictitious name, if defendant has no other defense, Epting v. Jones, 47 Ga. 622; pleading of a counterclaim is an admission of the existence of plaintiff's demand, Leclaire v. Thibault, 41 Ore. 601, 69 Pac. 552; Steele v. Etheridge, 15 Minn. 501; Sydner Co. v. Company, 125 N. C. 80, 34 S. E. 198; Davis v. Seattle Bank, 19 Wash. 65, 52 Pac. 526; to maintain a counterclaim the demands must be mutual, 20 Johns 137; Murray v. Toland, 3 Johns 569; Rush v. Thompson, 112 Ind. 158; Proctor v. Cole, 104 Ind. 373; Lowell v. Nelson (Mass.) 11 Allen 104; a judgment for plaintiff would discharge defendants, Blaser v. Flech, (Ore.) 189 Pac. 637; 30 Cyc. 84; the term "discount" may mean a loan, Farmers' Bank v. Baldwin, 23 Minn. 198, 18 C. J. 1052; Wheeler v. Bank, 42 Md. 581, 20 Am. St. Rep. 95; Black v. Bank, 96 Md. 399, 54 Atl. 88; Penn Ins. Co. v. Carpenter, 40 O. S. 260; a purchase of a note from payee with the latter's indorsement is not a sale unless indorsement be without recourse, Nicholson v. Bank, 92 Ky. 251, 16 L. R. A.

223; Bank v. Johnson, 104 U. S. 271; Fleckner v. Bank, 8th Wheat 350, 5 L. ed. 631; Dunkle v. Renick, 6 O. S. 524; the court failed to charge on all of the issues made by the pleadings, 5769 Comp. Stats., the verdict was based on matter of abatement, while the judgment is in form a final adjudication and void, Hooven Co. v. Featherstone's Sons 111 Fed. 81, (C. C. A. 8th). The judgment against plaintiff should be reversed.

*H. C. Brome* and *P. B. Coolidge* for Hudson and others.

The evidence showed that plaintiff was not the owner of the notes, and was not entitled to maintain an action thereon, 4 Stand. Ency. Pro, 229, production of the notes by plaintiff made a *prima facia* case requiring affirmative evidence by defendant to prove that plaintiff has parted with his title or acquired title fraudulently, which facts must be pleaded in the answer; the rule does not apply here, since one of plaintiff's witnesses testified that the bank was the owner and holder of the notes, Nat. Co. v. Reporting Co., 86 Wis. 352 cited by plaintiff is not in point, for the reason that it relates to the sufficiency of defendant's answer; the counterclaim of defendant Hudson is based upon an unlawful or irregular foreclosure of a chatel mortgage, which was a conversion of defendant's property, the measure of damages for which is the value of the property less the amount due on the mortgage debt, in which case the burden is upon defendant to plead and prove the amount due on the mortgage debt, 8 R. C. L. 489; 26 R. C. L. 1151; Cone v. Ivinson, (Wyo.) 33 Pac. 31, 35 Pac. 933; Sansone v. Studebaker, (Kans.) 187 Pac. 673; in such a case mortgagor is entitled to recover the highest market value of the property converted between the date of the conversion and the trial, Hilliard Co. v. Woods, 1 Wyo. 400; the notice of chattel mortgage foreclosure did not comply with the statute, which requires publication for three successive weeks, meaning that twenty-one days must elapse between the first publication and date of sale, 5703 Comp. Stats; the trial court held, however, that 4701 Comp. Stats. made three weekly inser-

tions of notice sufficient; the authorities hold that the words
"for three successive weeks" means three full weeks or
twenty-one days; the word "for" denoting a period of three
weeks, Early v. Burr, 188 U. S. 567; Wilson v. Ins. Co., 65
Fed. 38; Myakka Co. v. Edwards, 68 Fla. 372; Bank v.
Copeland, 18 Md. 305; Hartzell v. Vigen, 6 N. D. 117, Frisk
v. Reigelman, 75 Wis. 499; Cruzen v. Stephens, 123 Mo.
337; Wyant v. Co., 203 Pac. 961; State v. County, 79 N. W.
825; Bauchier v. Hammer, 123 N. W. 132; 5701-5703 Comp.
Stats. is a part of the Code of Civil Procedure; a reasonable
construction of these Sections is that they do not change
the period of time required, but were enacted to govern the
number of insertions in a newspaper during the publication
period required, in other words to regulate the publication
of legal notices in other than weekly papers; to dispense
with the necessity for a greater number of insertions than
the number of weeks for which the notice is required to be
published, and possibly to legalize publication at irregular
intervals in weekly newspapers.

*W.E.Mullen* and *W. E. Hardin* in reply.

Plaintiff's affirmative defense to the Hudson counter-
claim was not denied by a pleading and is therefore admit-
ted, 5671 Comp. Stats; McGinnis v. Beatty, 28 Wyo. 328,
204 Pac. 340; the citation to 4 Standard Ency. Pro. 229
supports contentions of plaintiff in error since he is the
owner of the notes, and produced them at the trial; the wit-
ness Fair testified that plaintiff was the owner and holder
of the notes; plaintiff was in possession of them; plaintiff's
right to sue was not put in issue by the pleadings, Wakeman
v. Norton, 24 Colo. 192; Buckmaster v. Williams, (Colo.)
212 Pac. 977; Bank v. Doyle, (Cal.) 203 Pac. 780; the gen-
eral issue admits the competency of plaintiff to sue, 31 Cyc.
207, the defense must be specially pleaded, Demple v. Car-
roll, 21 Wyo. 459; 31 Cyc. 219; Dodson v. Moran, 101 Kans.
592, 168 Pac. 841; Church v. Zywert, (Mont.) 190 Pac. 293;
Bank v. Stewart, 184 Fed. 673; Hukell v. McGinnis, (Colo.)
202 Pac. 110; the defense was waived, C. S. 5651-5653;

Gilland v. U. P. Ry. Co., 6 Wyo. 185; Mau v. Stoner, 15 Wyo. 127; Fidelity & Guaranty Co. v. Parker, 20 Wyo. 51, 121 Pac. 531; 5582 Comp. Stats. contains exceptions authorizing one to sue for the benefit of another or as a trustee; the trust relation or agency need not be shown in writing, 30 Cyc. 90; Weed v. Ins. Co., 133 N. Y. 394; Bolln v. Metcalf, 6 Wyo. 11; Kelley-Clark Co. v. Leslie, (Cal.) 215 Pac. 699; State v. Kinnett, 214 Pac. 776, 30 Cyc. 52; under the Negotiable Instruments Law the holder of a note may sue in his own name, Nichols v. Gross, 26 O. S. 425; Hayes v. Galion Co. 29 O. S. 330; White v. Stanley, 29 O. S. 423; Brown v. Ginn, 66 O. S. 316, 64 N. E. 123; pleadings must support the judgment, Fehlman v. Kinneer, 205 Pac. 1091; the Hudson counterclaim is insufficient in allegation of fact, a chattel mortgage cannot maintain an action against a mortgagee for trover, unless the mortgage has been paid, Jones on Chat. Mortgs. Sec. 435; Holmes v. Bell, 57 Mass. 322; Brown v. Bement, 8 Johns (N. Y.) 96; Burdick v. McVanner, 2 Denio (N. Y.) 170-171; Bank v. Wilbur, 16 Colo. 316, 26 Pac. 777; Hill v. Merrimam, 72 Wis. 483, 40 N. W. 399; 2 Cobbey Chat. Mtgs. 1034; a defendant cannot counterclaim against a claim the existence of which he denies, 5663 C. S., the foreclosure notice was published once each week for three successive weeks, in compliance with law, 4701 C. S., also 5701 C. S. The cases cited by counsel for defendant in error are based upon statutes essentially different from ours; the publication was sufficient, Courtland Bank v. Lighthall, 104 N. Y. S. 1024; Wood v. Moorhouse, 45 N. Y. 368; Bank v. Jacobson, 8 S. D. 292, 96 N. W. 453; McDonald v. Nordyke Co., 9 N. D. 290; Cook v. Lockerby, 16 N. D. 19, 111 N. W. 628; Granden v. Emmons, 10 N. D. 223, 3 Jones on Mtgs. 7th Ed. Sec. 1612; Calvert v. Calvert, 24 Pac. 1043; Smith v. Collis, (Mont.) 112 Pac. 1070; Southern Ry. Co. v. Ind. Ry. Co., (Ind.) 81 N. E. 65.

KIMBALL, Justice.

On January 5, 1921, defendants, Frank L. Hudson, Harriet Hudson and Leonard W. Hudson, made and delivered

nine promsisory notes in the aggregate sum of $126,000,
payable to plaintiff, John W. Hay, secured (1) by a chattel
mortgage from Frank L. Hudson to plaintiff; (2) by a real
estate mortgage from Frank L. Hudson and Harriet Hud-
son to plaintiff; (3) by a real estate mortgage from Frank
L. Hudson and Leonard W. Hudson to plaintiff, and (4)
by a note for $7500 made by defendant, Presgroves, to
Frank L. Hudson, secured by two real estate mortgages,
and assigned by Frank L. Hudson to plaintiff as collateral
security for the notes first mentioned.

The nine notes evidencing the principal indebtedness all
became due at the same time, October 13, 1921, and default
having been made in their payment, the plaintiff, on Oc-
tober 14, 1921, took possession of the property covered by
the chattel mortgage which he proceeded to foreclose by ad-
vertisement and sale. The property sold for $99,522.60
which, after deducting claimed expenses, was applied in
payment of the interest on all nine of the notes to November
3, the day of sale, and in payment of the principal of three
notes in full and another in part. The three notes that were
thus fully paid were surrendered at the trial. The action
was for recovery of the amount due on the six other notes
and for foreclosure of the several real estate mortgages. It
is conceded that as Presgroves was served with summons
outside the state and made no appearance in the action no
money judgment could have been rendered against him.

The answer of defendants, Harriet Hudson and Leonard
W. Hudson, was a general denial. The answer of Frank
L. Hudson, admitted the execution and delivery of the notes;
the execution of the real estate mortgages; the assignment
of the Presgroves note as collateral, and denied all other
allegations of the petition. As a counterclaim, defendant,
Frank L. Hudson, set forth a cause of action in trover, ad-
mitting the execution and delivery of the chattel mortgage,
and alleging that the property covered thereby had been un-
lawfully converted by plaintiff to defendant's damage in
the sum of $220,000.

The trial was to a jury and resulted in a verdict and judgment in favor of defendants on the causes of action set forth in plaintiff's petition, and in favor of the plaintiff on the counterclaim of Frank L. Hudson. Both the plaintiff and the defendant last mentioned bring error. The two error proceedings have been argued and submitted together, and may be disposed of by one opinion.

The judgment against the plaintiff on the causes of action set forth in the petition followed a finding that he was not the real party in interest.

The plaintiff alleged in his petition that he was the holder of the notes which bore his endorsement in blank. He testified that he was both the holder and owner, produced all the notes, surrendered those that had been paid in full and put in evidence the others. We think it was clear from undisputed evidence that the plaintiff had taken all the steps theretofore taken for the collection of the debt and had made or authorized all disbursements properly added to the indebtedness, such as the expenses of foreclosure and taxes on the mortgaged property. Mr. Fair, the cashier of the American National Bank, a witness for the plaintiff, testified that he had acted as the agent of the plaintiff in keeping account of the transactions affecting the loan. Other testimony given by this witness raised the doubt as to the right of the plaintiff to maintain the action. On his direct examination he testified that the notes in suit, on their delivery to the plaintiff, were discounted with the bank. On cross-examination he testified that the bank owned the notes from the day they were made, and, quoting from the record:

"Q. That is, the bank still holds the notes?

A. The bank still holds the notes—you understand, they were discounted for Mr. Hay.

Q. Yes; that is, he wrote his name on the back, placed the notes in the bank and the money therefor was deposited to Hudson's credit. The consideration was the bank's money, and not Mr. Hay's money.

A.  Not necessarily.

Q.  Well, what is the fact?

A.  The bank agreed to discount these notes for Mr. Hay; we advanced him the money.

Q.  When a bank discounts a note, the bank is the owner of the note from that time on, is it not?

A.  Temporarily so, yes.

Q.  And always so, unless somebody takes up or pays the note, isn't it?

A.  It is.''

On re-direct he testified:

''Q.  Mr. Fair, in this particular instance, what were the arrangements about these notes?

A.  We agreed to discount them.

Q.  And after they were due, what occurred, if anything?

A.  We demanded payment from the maker and also from Mr. Hay, the endorser.

*   *   *

Q.  Do you mean to testify that the bank owns these notes now?

A.  They are the property of Mr. Hay, but at the same time, they are in our possession.''

On re-cross:

''Q.  And the balance due on these notes has never been paid to the bank by Mr. Hay, or anyone else?

A.  No.

Q.  And the possession of the notes has remained with the bank since they were discounted to the bank by Mr. Hay?

A.  Naturally we wouldn't give them up until they were paid.''

This evidence received no special notice at the time. It came into the case rather incidentally and without any accompanying circumstances to give warning of the import-

ance it was later to assume. The defendants' pleadings had not challenged plaintiff's right to collect what was due on the notes, and one of the defendants had pleaded a counter-claim which he continued to urge throughout the trial. The defendants made no offer to amend their answers, and there was no suggestion that any defendant had a defense against the American National Bank that was not available against the plaintiff. In these circumstances it is perhaps not strange that counsel for plaintiff seem to have overlooked the possibility of this testimony being seized upon as a ground for questioning the plaintiff's right to maintain the action. They contend that the pleadings were insufficient to raise such an issue, but that question we deem it unnecessary to discuss.

At the conclusion of all the evidence counsel for defendants made the point that the plaintiff's evidence (meaning the testimony of the witness, Fair, supra) established that plaintiff was not the real party in interest entitled to maintain the action, and a directed verdict for the defendants on that theory was requested. Plaintiff then asked leave to re-open his case and to re-call Mr. Fair to clear up the matter. Defendants objected to this on the ground that the witness should not be given an opportunity to contradict his testimony already given. The objection was sustained. The court then refused to direct a verdict on this issue as requested by defendants, but gave over plaintiff's objection an instruction as follows:

"If you find from the evidence in this case that the notes in suit at the time of their execution were discounted by the payee, John W. Hay, to the American National Bank of Cheyenne, that said bank from its funds advanced the consideration received by the defendant, Frank L. Hudson, on account of and for the execution of said notes, that said notes have not since the same were discounted by said Hay to said bank, been transferred back to the said John W. Hay, then you are instructed that the American National

Bank of Cheyenne is the real party in interest, and the plaintiff John W. Hay cannot recover in this action, and your verdict must be for the defendants upon the several causes of action set up in plaintiff's petition.''

The notes in suit being endorsed in blank were payable to bearer (N. I. L. §9, C. S. § 3942), and negotiable by delivery. N. I. L. § 30, C. S. §3963. At common law, as including the law merchant, the party in possession of such an instrument could enforce payment by suit in his own name, and the defendant could not question his title in any manner short of impeaching its good faith. Ancona v. Marks, 7 H. & N. 686; Law v. Parnell, 7 C. B. (N. S.) 282; Little v. Obrien, 9 Mass. 423; Conroy v. Warren, 3 Johns. Cas. (N. Y.) 259; 2 Am. Dec. 156; Guernsey v. Burns, 25 Wend. (N. Y.) 411; Iowa & California Land Co. v. Hoag, 132 Calif. 627; 64 Pac. 1073; Greene v. McAuley, 70 Kan. 601, 79 Pac. 133, 68 L. R. A. 308. Under code provisions like our section 5580 requiring actions to be prosecuted in the name of the real party in interest some doubt arose as to whether a defendant sued by the holder of a negotiable instrument could go behind the plaintiff's formal title and defeat the action by showing that some other person was the real party in interest, but we think by the greater weight of authority it was held that the rule of the common law was not changed. Pomeroy on Remedies, §§ 128-131; Giselman v. Starr, 106 Calif. 651, 40 Pac. 8; Manley v. Park, 68 Kan. 400, 75 Pac. 557, 66 L. R. A. 967, 1 Ann. Cas. 832 approving dissenting opinion in Stewart v. Price, 64 Kan. 191, 67 Pac. 553, 64 L. R. A. 581. Whatever might have been our holding on that point before the enactment of the Negotiable Instruments Law, there is no longer any room for doubt. The bearer is the holder (N. I. L. § 191, C. S. § 4124), and the holder may sue in his own name (N. I. L. § 51, C. S. § 3984) though he has no interest in the proceeds. Owen & Co. v. Storms & Co., 78 N. J. Law 154; 72 Atl. 441; Bovarnick v. Davis, 235 Mass. 195; 126 N. E. 380; Harrison

v. Pearcy, 174 Ky. 485; 192 S. W. 513; Antelope County
Bank v. Wright, 90 Nebr. 621; 133 N. W. 1123, Ann. Cas.
1913B, 1476; Craig v. Palo Alto Stock Farm, 16 Ida. 701,
102 Pac. 393.

We are therefore of opinion that the right of the holder
of negotiable paper to collect it by suit is not affected by
section 5580, supra, and that the Negotiable Instruments
Law in so far as it affirms that right is declaratory of the
common law.

From what we have said it is clear that if the plaintiff
was the holder of the notes defendants, having no defense
which they could not then urge against the plaintiff, were
not interested in the question of ownership. It is contend-
ed, however, that the plaintiff failed to prove that he was the
holder, or, at least, that his evidence warranted a finding
that he was not.

The plaintiff proved that he was the holder when he pro-
duced the notes payable to bearer and in his possession. Un-
der the authorities already cited this evidence was sufficient
*prima facie* to establish his right to prosecute the action, and
continued to be sufficient for that purpose to the end of the
case unless overcome by a showing of bad faith. In Greene
v. McAuley, 70 Kan. 601, 79 Pac. 133, 68 L. R. A. 308, it
was remarked that there was a singular lack of explanation
or illustration as to just what might be considered bad faith
in this connection, and after a review of many of the cases
it was said the true rule of general, if not universal, applica-
tion is that, "so far as affects the question of the right of
the plaintiff to maintain the action, the only inquiry open
to the defendant is whether the plaintiff has such a title to
the note that payment made to him would be a complete pro-
tection to the defendant from further liability." See, also,
Waldock v. Winkler, 51 Okla. 485, 152 Pac. 99; Continental
Securities Co. v. Interborough R. T. Co., 118 Misc. Rep. 11,
193 N. Y. Supp. 892; 2 Daniel Neg. Ins. § 1191.

The defendant is protected if the real owner consents to
the maintenance of the action by the holder. Jump v. Leon,

192 Mass. 511, 78 N. E. 532, 116 Am. St. Rep. 265. However, the plaintiff-holder is not required to prove that the owner consents (Lowell v. Bickford, 201 Mass. 543, 88 N. E. 1) and it seems to follow that want of consent on the part of the owner to the maintenance of the action by the apparent holder is a matter of defense, and, at least one of the things that should appear before it can be held that the plaintiff's possession is in bad faith.

In view of these principles, conceding that the bank was the owner of the notes, the plaintiff was entitled to maintain the action unless the testimony of the witness, Fair, justified a finding either that the plaintiff was not in possession of the notes, or that he was suing thereon without the bank's consent. We think the testimony justified neither finding. When the witness stated that the bank held the notes and that it had possession of the notes, he could not have meant that it had the actual possession, for it is proved by the record and conceded that the notes were then in the custody of the court after having been produced, identified and introduced in evidence by the plaintiff. The witness must have meant only that he considered that the possession of the plaintiff, or the court, was the possession of the bank, or for its benefit. In the circumstances, there being no evidence that plaintiff's possession was tortious, the cashier's very statement that the bank still held the notes, so far from proving that the bank objected or failed to consent to the maintenance of the action, tended on the other hand to show that the possession of the notes and the prosecution of the suit by the plaintiff were with the bank's consent and for its benefit. From the undisputed evidence we have no doubt that payment to plaintiff would have been payment "in due course" within the meaning of section 51, supra, of the Negotiable Instruments Law, and that a judgment in his favor would have fully protected the defendants from further liability. It follows that the finding and judgment that the plaintiff was not entitled to maintain the action is unsupported.

The judgment in favor of the plaintiff on Frank L. Hudson's counter-claim followed a directed verdict. The counter-claiming defendant did not deny that there was a default which gave the plaintiff, as mortgagee, the right to take possession and sell the mortgaged property, but contended that the notice of sale was not published for the time required by section 4701, Wyo. C. S. 1920, which provides:

"Notice that such mortgage or conveyance will be foreclosed by a sale of the mortgaged property or some part thereof, shall be given by an advertisement published in any regular issue of any newspapr of general circulation published in the county in which such sale shall take place, not less than once a week, for three successive weeks; * * *"

The notice in question was published October 19, October 26, and November 2, and the sale was had November 3, only fifteen days after the first publication. It is the defendant's contention that under the statute three full weeks, or 21 days, must elapse between the date of the first publication and the date of the sale. This view is supported by many authorities, including Early v. Homans, 16 How. 610; 14 L. ed. 1079; Leach v. Burr, 188 U. S. 510; 23 Sup. Ct. 393; 47 L. ed. 567; Walker v. Stewart, (D. C.) 261 Fed. 427; Finlayson v. Peterson, 5 N. Dak. 587; 67 N. W. 953, 33 L. R. A. 532; 57 Am. S. Rep. 584; In re Hoscheid's Estate, 78 Wash. 309; 139 Pac. 61; Myakka Co. v. Edwards, 68 Fla. 372; 67 So. 217, Ann. Cas. 1917 B, 201; Bacon v. Kennedy, 56 Mich. 329; 22 N. W. 824; State v. Cherry Co., 58 Nebr. 734; 79 N. W. 825; Bouchier v. Hammer, 140 Wis. 648, 123 N. W. 132. Other authorities take a different view. Olcott v. Robinson, 21 N. Y. 150; 78 Am. Dec. 126; State v. Yellow Jacket Silver Min. Co., 5 Nev. 415; Knowlton v. Knowlton, 155 Ill. 158; 39 N. E. 595; Hollister v. Vanderlin, 165 Pa. St. 248; 30 Atl. 1002, 44 A. S. R. 657; McDonald v. Nordyke Marmon Co., 9 N. Dak. 290; 83 N. W. 6; Thomas v. Issenhuth, 18 S. Dak. 303; 100 N. W. 436; Swett v. Sprague,

55 Me. 190; Alexander v. Alexander, 26 Nebr. 68; 41 N. W. 1065; Banta v. Wood, 32 Ia. 469.

The apparent conflict is often found to be due to differences in the language of the statutes or orders by which a notice by publication was required, and some of the cited cases are not very persuasive one way or the other in interpreting the Wyoming law. Some of the decisions cannot be reconciled. Perhaps more often than in any other state the question has had the careful consideration of the Nebraska courts. State v. Hanson, 80 Nebr. 724, 115 N. W. 294 and Claypool v. Robb, 90 Nebr. 193, 133 N. W. 178, and cases cited. In State v. Hanson, at page 737 of 80 Nebr. (115 N. W. 299) the point of difficulty is stated as follows:

"Where the time mentioned by the statute expresses the duration of the notice, the same must be published for and during the time mentioned. Where, however, the time mentioned indicates only the number of times the notice is required to be published, it is satisfied if the notice is published the number of times mentioned."

This statement, we venture to say, all courts will approve. Compare Finlayson v. Peterson, supra, with McDonald v. Nordyke Marmon Co., supra; Myakka Co. v. Edwards, supra, with Townsend v. Brown, 69 Fla. 155, 67 So. 869. But it is not always easy to decide whether the time mentioned in the statute was intended to fix the duration of the notice, or only the number of times for the publication of the notice.

The opinion in the Nebraska case continues:

"It is apparent that the phrases "shall publish a notice once each week for three weeks," and "a notice shall be given for three weeks by publication," have different meanings. In the first "for three weeks" limits the number of publications, and in the other phrase "for three weeks" fixes the period of time during which the publication must be made."

All the decisions do not support the view expressed in the last quotation, and it is unnecessary for us to give it our unqualified approval. It is at least a persuasive argument that the notice in the case at bar was a compliance with section 4701, supra, even without any other legislative declaration on the subject. We have, however, another statute which we think clears up the difficulty. An act passed in 1909, entitled ''An act relating to and regulating the publication of legal notices and legalizing publications heretofore made in conformity with this act'' now appears in the code of civil procedure as sections 5701 to 5703, C. S. 1920. We may say in passing that we know no reason for placing this act among the provisions of the civil code. The section of the act pertinent to the present inquiry (Sec. 3, Ch. 30, Laws of 1909, now part of Sec. 5703, supra) is as follows:

''In all cases where under the laws a notice is required or permitted to be published for a number of weeks specified, it shall be sufficient that the publication be made once each week for the number of issues corresponding to the number of weeks from (for) which such publication is required to be made; Provided, however, That not more than fifteen days shall intervene between the date of the last publication and the time set for the intended hearing, action, sale, or other proceeding or act. In no case shall the notice given for a longer time than required by law, be held defective for that reason.''

Section 4701 requires a publication at least once a week for three successive weeks. Section 5703 says that a notice under such a law shall be sufficient if published once each week for the number of issues corresponding to the number of weeks, and the doubt whether the phrase ''for three successive weeks,'' as used in section 4701, prescribes the duration of the notice or only the number of publications, must be resolved in favor of the latter construction. The proviso of section 5703 shows that the legislature considered the question of the time that should elapse between the date of

the last publication and the date of doing the advertised act, and while it carefully guarded against too long an interval it significantly omitted to say that any interval should be too short. We think, therefore, that in the case at bar the notice published in a weekly newspaper for three successive issues, and the sale had less than 15 days after the last publication, satisfied the statute. The trial judge was right in holding that the notice was sufficient, and as its alleged insufficiency was the only reason for the claim of a conversion of the mortgaged chattels, the directed verdict for plaintiff on the counter-claim was proper.

Besides the issue on the counter-claim and the question as to the plaintiff's right to maintain the action the only other controversy at the trial arose over disputed items of disbursements by plaintiff which he had charged against defendants as expenses of foreclosure. Except for the dispute over such items a judgment might be directed for plaintiff. As it is, a new trial must be had for the purpose of deciding the amount due upon the obligations sued on.

The judgment on the counter-claim will be affirmed. The judgment against plaintiff will be reversed and the case remanded for a new trial for the purpose indicated.

POTTER, Ch. J., and BLUME, J., concur.

NOTE—See 8 C. J. pp. 359, 825, 826, 827, 1005, 1011, 1054; 29 Cyc. p. 1121.