No. 33,677

DAVE MALONE et al., as Trustees of FULTON LODGE A. F. & A. M. No. 210, *Appellees*, v. J. F. WIMMER et al., as Trustees of SAMARITAN LODGE No. 35, I. O. O. F., *Appellants*.

(75 P. 2d 224)

Opinion
filed January 29, 1938.

*Walter B. Patterson,* of Fort Scott, for the appellants.
*Douglas Hudson,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to foreclose a mortgage. The defendants appeal from an order sustaining a demurrer to their amended answer and cross petition and a judgment for plaintiffs.

For brevity we shall refer to the plaintiff appellees as the Masonic Lodge and to the defendant appellants as the Odd Fellow Lodge. The two lodges jointly owned a building on real estate in Fulton, Kan., and used the same for their respective lodge purposes. In referring to the pleadings we shall omit all matters not necessary to a discussion of the specifications of error.

In its petition the Masonic Lodge alleged that on July 17, 1926, the Odd Fellow Lodge borrowed $1,000 from Sherman Baird on a promissory note due in five years and secured by a mortgage on its undivided one-half interest in the above real estate; that Sherman Baird assigned the note and mortgage to the Citizens State Bank of Mapleton on March 4, 1935, and that bank assigned the note and mortgage to the Masonic Lodge on June 13, 1935; that the Odd Fellow Lodge had paid no interest on the debt after July 17, 1930; that there was due the sum of $1,340, and that the Masonic Lodge was entitled to foreclose the mortgage. Judgment for the above amount and for foreclosure of the mortgage was prayed.

The amended answer and cross petition of the Odd Fellow Lodge may be divided into six parts. The first was a general denial. The second part was that the trustees of the Masonic Lodge were without authority to maintain the action; that under G. S. 1935, 17-1705, they could not maintain it; that the present suit should be dismissed, and if anything was due from the Odd Fellow Lodge to the Masonic Lodge, it was due the corporation and not the trustees of the latter lodge. The third part was that about March 15, 1928,

the two lodges had entered into a written contract providing for a committee of members of both lodges to have charge of the building, a copy of the contract being attached. In substance, it provided that the committee should have charge of the building known as the Temple, see to repairs, pay taxes, light bills, hire and pay a janitor, have full charge of the Temple for entertainments, etc., and notify each lodge of the amount due from it. It was alleged that the Masonic Lodge, in violation of that contract and to circumvent it, wrongfully took the assignment of the note and mortgage sued on, and that if the Odd Fellow Lodge owed the Masonic Lodge any money it was not the basis of a judgment lien or mortgage lien against the real estate, and further that the pending suit was filed without express authority of the Masonic Lodge corporation. The fourth part was a denial that the Odd Fellow Lodge owed the Masonic Lodge $1,340, but that it did owe the sum of $600; that Sherman Baird had offered to compromise the debt and on March 4, 1935, had proposed to J. F. Wimmer, one of the trustees of the Odd Fellow Lodge, he would accept $600 for the note and mortgage; that Wimmer accepted the offer and tendered $100. That the agreement and settlement were supported by a valuable consideration and were of benefit to Baird in that he had a lien on only one half of the building; that the building was constructed for a lodge hall and if used for commercial purposes it would have to be reconstructed, and that the mortgaged interest was not worth the amount due; that the taxes were delinquent; that the Odd Fellow Lodge would have an eighteen months' redemption period; that the taxes were in arrears; that the Odd Fellow Lodge was hard up and a deficiency judgment could not be collected; that business conditions in Fulton were poor; that the sum of $600 agreed on was in excess of the value of the note and mortgage, and that it was to the distinct benefit and advantage of Sherman Baird to make the compromise; that Sherman Baird did not withdraw his offer, but did on the same day sell the note and mortgage to the named bank for $500 when his offer to the Odd Fellow Lodge was still outstanding and had been accepted by it; that when the bank took the assignment the note was past due and was taken subject to the $600 offer and acceptance. The fifth part was that a mortgage on the interest of the Masonic Lodge had been foreclosed, the amount of the judgment being in excess of $2,-100; that the judgment was sold and later satisfied by the Masonic Lodge, either as a corporation or by its trustees on payment of $250

on February 15, 1935, and thereafter the Masonic Lodge had purchased the note and mortgage here involved for the purpose of forcing the Odd Fellow Lodge to lose its interest in the real estate. The sixth part was a request that if foreclosure be allowed the Odd Fellow Lodge have an eighteen months' period of redemption and that it be required to pay only $600 and one half of the delinquent taxes. Prayer accordingly.

The Masonic Lodge demurred generally to the answer and cross petition, and also amended its petition to allege payment of taxes totaling $115.05 and seeking to recover one half thereof from the Odd Fellow Lodge.

The demurrer was sustained. Judgment of foreclosure followed in which the plaintiff recovered the full amount of its claim. Provision for sale and application of proceeds was made, and the period of redemption was fixed at eighteen months. The motions of the Odd Fellow Lodge for reconsideration of the ruling on the demurrer and for vacating of the judgment were denied and in due time it appealed. The errors specified are that the trial court erred in sustaining the demurrer, in rendering judgment and in denying the motion for reconsideration.

We shall treat the various contentions in the order presented by the appellant.

It is first insisted that the trustees of the Masonic Lodge are not authorized to maintain this action and that it should have been brought in the name of the corporation, it being contended that under G. S. 1935, 17-1705, the trustees may sue only with respect to any matter affecting its real estate and buildings; that it owns only an undivided one-half interest in the building, but seeks to foreclose a mortgage on the interest it does not own. A somewhat analogous contention was made in *Rice v. Kilworth*, 132 Kan. 418, 421, 295 Pac. 700, where, after discussion, it was said:

"The court in *Green v. McAuley*, 70 Kan. 601, 79 Pac. 133, laid down the correct rule when it said:

"'This suggests what we conceive to be the true rule of general, if not of universal, application, that so far as affects the question of the right of plaintiff to maintain the action the only inquiry open to the defendant is whether the plaintiff has such title to the note that a payment made to him would be a complete protection to defendant from any further liability.' (p. 607.)" (p. 422.)

We cannot agree with appellant that the above statute precludes the trustees from maintaining the action. Even though the Masonic

Lodge had title to only one half of the property, its interest was in the property as a whole, and it might reasonably do whatever was necessary to protect it; it had an interest in who its cotenant was or would be. In any event, the appellant is in no different situation than it would have been if the corporation had been substituted for its trustees as plaintiff.

It is next contended that the arrangement whereby a committee made up of members of the two lodges, and whose duties were to see to repairs, pay the taxes, light bill and hire and pay the janitor, etc., and to report to each lodge the amount due from it, amounted to an easement and precluded the Masonic Lodge from acquiring the mortgage on the Odd Fellow Lodge's interest and enforcing it. The only authority cited in support is *Ranney v. Childs*, 96 Kan. 483, 152 Pac. 621, where a stairway agreement between adjoining landowners was held to run with the land. That case is not in point. If appellant's contention is good, any arrangement between tenants in common for the care and maintenance of their joint property would not only prevent one's holding a mortgage on the other's interest, but would as well prevent partition of the jointly held real estate. And it may be further observed that the claimed agreement was made after the mortgage in question had been given and duly recorded. The contention is not good.

Appellant places its main reliance on the proposition that it had compromised and settled the amount of the debt secured by the mortgage with Sherman Baird, and that when he negotiated the note and mortgage to the bank and it to the Masonic Lodge, the note was past due and subject to all equities, including notice of the settlement. It seems fruitless to enter into a discussion of what may legally constitute a compromise or an accord and satisfaction, even though both are argued rather fully in the briefs. Giving effect to the rule that as against a demurrer the pleading attacked is to be liberally construed in favor of the pleader, and omitting the details, all that is alleged is that Sherman Baird, then the owner, offered to accept $600 for his note and mortgage and that one of the defendant trustees, for and on behalf of the trustees and the lodge, accepted and tendered $100. The very statement shows that the acceptance was a qualified one. There is no allegation that Baird ever agreed to the counter proposition, and though the pleading is silent, the only conclusion that may be drawn from what is said is that he did not. It is a familiar rule of contracts there must be a meeting of the minds. In 12 C. J. 317 it is said:

"A definite meeting of the minds of the parties is essential to a valid compromise, for a settlement cannot be predicated on equivocal actions of the parties. . . . A proposition made by way of settlement or compromise of a claim, unless accepted as made, is not binding on either party." (pp. 317, 318.)

Here the allegations show that the offer was met with a counter-offer which was not accepted. That must be the end of the matter.

A review of the record fails to show that any ruling of the trial court in connection with the judgment was erroneous and prejudicial as to appellants, or that the trial court erred in denying their motion for reconsideration, in effect a motion for a new trial.

In connection with presentation of the appeal in this court, the appellees have filed a counter abstract containing testimony in another action between the same parties. The appellants have filed objections thereto and move that the counter abstract be stricken. The present appeal involves only a ruling on a demurrer to a pleading with judgment following that ruling. That ruling was of necessity confined to the pleadings in the case at bar. We need not discuss whether in some instances such a counter abstract might be proper. It was not proper here and is stricken from the files.

The judgment of the trial court is affirmed.